**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KIM L. MAYS** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-1014** |
| **BOARD OF COMMISSIONERS PORT OF NEW ORLEANS, et al.** | **SECTION: "G"(3)** |

**ORDER**

Before the Court is Defendants Board of Commissioners, Port of New Orleans' (the "Port") and Ryan Bylsma's ("Bylsma") (collectively, "Defendants") "Rule 12(b)(6) Partial Motion to Dismiss."[1]  Having considered the motion, the memoranda in support and in opposition, the complaint, and the applicable law, the Court will grant the motion in part, deny the motion in part, and grant Plaintiff leave to amend her complaint within ten days of this Order.

**I. Background**

*A.      Factual Background*

According to the complaint,  Plaintiff Kim Mays is an African-American female and veteran of the United States Army who suffers from post-traumatic stress disorder ("PTSD").[2]  She filed this lawsuit against her employer, the Port, as well as against two Port employees: Ryan Bylsma ("Bylsma") and Armand Rodriguez ("Rodriguez").[3] She does not state in the complaint whether she names Bylsma and Rodriguez in their individual and/or official capacities.

Plaintiff alleges that Defendants violated her rights pursuant to 42 U.S.C. §§ 1981, 1983, and

---

[1] Rec. Doc. 8.

[2] Rec. Doc. 1.

[3] Armand Rodriguez is not a party to the pending motion.

1

1985; Title VII; the Americans with Disabilities Act ("ADA"); the Family and Medical Leave Act ("FMLA"); and Louisiana state discrimination statutes. She additionally brings causes of action for intentional infliction of emotional distress ("IIED") and for conspiracy.

Specifically, Plaintiff alleges that in July 2011, an "inappropriate sexually oriented remark" was made to her by Rodriguez. She states that she reported the incident to her immediate supervisor, but claims that "the only actions taken by the Port's management was [sic] to counsel Mr. Rodriguez and request that he apologize."[4]  Plaintiff next asserts that on November 23, 2013, Rodriguez sent her "an inappropriate e-mail that was sexual in nature," which she reported to Bylsma, who was her supervisor at the time, as well as other individuals at the Port.[5] According to the complaint, "[t]he Port failed to remove Mr. Rodriguez from proximity to Ms. Mays in the workplace and failed to take other immediate and appropriate corrective action because Mr. Rodriguez is Caucasian and Ms. Mays is African-American."[6]

Plaintiff contends that she sought medical treatment on December 4, 2013 for PTSD exacerbated by a hostile work environment.  According to the complaint, she was released to return to work on December 23, 2013, and her physician "requested that the Port provide Ms. Mays with a reasonable accommodation by allowing Ms. Mays to work from home or removing her harasser [sic] from the workplace."[7] Plaintiff alleges that the Port failed to provide reasonable accommodations, and also failed to designate her leave as FMLA leave.[8]

---

[4] *Id.* at pp. 3–4.

[5] *Id.* at p. 4.

[6] *Id.*

[7] *Id.* at p. 5.

[8] *Id.*

Plaintiff additionally alleges in her complaint that she filed a charge with the EEOC on December 4, 2013. She alleges that, in retaliation for filing that charge, the Port issued a "pre-deprivation notice recommendation for a non-disciplinary removal," removed her name plate from her office door, packed her personal items from her office, removed her name from the organizational chart, and conspired to place her in a shared office.[9] She asserts that the pre-deprivation notice was rescinded on January 16, 2014.[10]

## B.   *Procedural Background*

Plaintiff filed the complaint in this matter on May 2, 2014.[11] Defendants filed the pending motion to dismiss for failure to state a claim on June 17, 2014.[12] Plaintiff filed a memorandum in opposition on June 30, 2014,[13] and Defendants filed a memorandum in reply on July 24, 2014.[14]

## II. Parties' Arguments

### A.   *Defendants' Arguments in Support of Partial Dismissal*

Defendants first contend that Plaintiff has not and cannot state a claim upon which relief can be granted for her Title VII, ADA, or state law discrimination claims against Bylsma.[15] They argue that individuals are not subject to liability under either Title VII or the ADA.[16] Next, they aver that

---

[9] *Id.* at p. 6.

[10] *Id.*

[11] Rec. Doc. 1.

[12] Rec. Doc. 8.

[13] Rec. Doc. 13.

[14] Rec. Doc. 17.

[15] Rec. Doc. 8-1 at p. 4.

[16] *Id.* (citing *Ackel v. Nat'l Communications*, 339 F.3d 376, 381, n. 1; *Franklin v. City of Slidell*, 936 F.Supp.2d 691, 703 (E.D. La. 2013)).

Louisiana's Employment Discrimination Statute prohibits intentional discrimination by employers, but Bylsma was not Plaintiff's employer within the meaning of the statute.[17]  Defendants also argue that Plaintiff's claim arising under Louisiana Revised Statute § 51:2231, which "creates the Louisiana Human Rights Commission as a basis for relief," should be dismissed against Bylsma because  "this cause of action cannot be brought against individual employees."[18]

Next, Defendants seek partial dismissal of Plaintiff's § 1983, conspiracy and IIED claims against both the Port and Bylsma. To succeed on a § 1983 claim against the Port, according to Defendants, Plaintiff must prove (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom.[19] Here, Defendants aver, Plaintiff has failed to allege "any official policy or widespread custom, the purpose of which was to (and actually did) deprive her of her constitutional rights."[20] Defendants do not present any arguments with respect to whether Plaintiff states a viable § 1983 claim against Bylsma.

Next, Defendants argue that Plaintiff makes only a conclusory allegation of a conspiracy, but that she fails to allege the nature of the alleged conspiracy or "specifically demonstrate with material facts that the defendants reached an agreement" to deprive her of her rights.[21] Also, Defendants contend that Plaintiff's IIED claim must be dismissed because she fails to allege any conduct that

---

[17] *Id.* at p. 5 (citing La. Rev. Stat. § 23:301) (citing *Dejoie v. Medley*, 41,333 (La. App. 2 Cir. 12/20/06); 945 So.2d 968).

[18] *Id.* at pp. 6–7 (citing *Jones v. GeoEngineers, Inc.*, No. 10-232, 2011 WL 1347989 at *5 (M.D. La. Apr. 8, 2011)).

[19] *Id.* at p. 7 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 688-89 (1978)).

[20] *Id.* at p. 9.

[21] *Id.* at pp. 9–10.

would rise to the level of "outrageous conduct."[22] Defendants additionally seek dismissal of Plaintiff's request for punitive damages because, they contend, political subdivisions of the state cannot be subject to such damages, and the Port is a political subdivision of the state.[23] Again, Defendants do not make any arguments with respect to whether Plaintiff may obtain punitive damages from Bylsma. Finally, Defendants argue that Plaintiff has failed to exhaust administrative remedies with respect to her Title VII and ADA claims because she has not alleged receipt of a right-to-sue notice from the EEOC with respect to any of her claims.[24]

**B.    *Plaintiff's Arguments in Opposition to Partial Dismissal***

Plaintiff argues first that Defendants offer no argument as to why her § 1983 claims against Bylsma should be dismissed, and that her complaint "clearly states that the Port management, those in policymaking positions, failed to take appropriate action."[25] She contends that:

> The failure of the entire management team to take appropriate action is indicative of a moving force engaged in a widespread practice and custom of maintaining a policy designed to deprive Ms. Mays of her rights pursuant to Title VII, the FMLA, the ADA, and the United States Constitution's Fourteenth Amendment right to due process.[26]

With respect to her conspiracy claim, Plaintiff states that her complaint "is very clear and precise," and that "[h]er claim identifies her supervisor, Ryan Bylsma, the Port's Administrative Director, Cynthia Swain, Mr. Armand Rodriguez's immediate supervisor, Richard Bush and even

---

[22] *Id.* at p. 17.

[23] *Id.* at p. 10.

[24] *Id.* (citing *Garret v. City of Houston*, 102 Fed. App'x 863, 864 (5th Cir. 2004)).

[25] Rec. Doc. 13 at p. 2.  The Court notes that only the Port, Bylsma, and Rodriguez are party defendants in this action.

[26] *Id.*

Mr. Bush's supervisor, Jerry Knox."[27] Turning to the issue of punitive damages, Plaintiff states that Defendants seek dismissal of her claims for punitive damages against the Port, but that "Defendants do not argue that Ms. Mays' other punitive damages claims must be dismissed. Consequently, those claims must be allowed to go forward."[28]

Plaintiff next argues that she has stated a viable IIED claim because:

> [t]he conduct of defendants was extreme in that they refused to take appropriate action notwithstanding the fact they had notice from Ms. Mays' mental healthcare provider that Ms. Mays' [sic] was suffering from mental health problems that were 'markedly worsened' by occurrences in the workplace.[29]

Plaintiff argues that Defendants knew, or should have known, that their failure to take appropriate action would result in her "experiencing extreme emotional distress."[30] Finally, Plaintiff argues that she has filed EEOC charges in connection with her Title VII and ADA claims, but she concedes that she has not received a right-to-sue letter with respect to any of them.[31] She cites *Hilliard v. Parish*[32] to support her argument that "failure to receive a Right to Sue letter does not destroy this Court's jurisdiction."[33]

## C. *Defendants' Arguments in Further Support*

Defendants state that Plaintiff failed to address or oppose their assertion that the Title VII,

---

[27] *Id.* at p. 3. The Court notes that only the Port, Bylsma, and Rodriguez are party defendants in this action. Additionally, Plaintiff does not state whether the individuals identified above were acting in their official or individual capacities.

[28] *Id.* Plaintiff does not identify the "other punitive damages claims" to which she refers.

[29] *Id.*

[30] *Id.*

[31] *Id.* at p. 4.

[32] *Hilliard v. Parish*, 991 F.Supp.2d 769 (E.D. La. 2014) (Milazzo, J.).

[33] *Id.*

ADA, and state law claims against Bylsma are not cognizable and should therefore be dismissed.[34] Defendants reaver that Title VII and ADA claims are not cognizable against an individual, and that state law discrimination claims cannot be asserted against individuals who are not employers.[35]

Next, with respect to her § 1983 claim against the Port, Defendants argue that Plaintiff has failed to identify an official policy that has resulted in the violation of her constitutional rights.[36] Defendants contend that Plaintiff's allegation that the actions at issue were of the "entire management team" and were "indicative of a moving force engaged in a widespread practice and custom" were not included in the complaint.[37]  These allegations, according to Defendants, are conclusory and devoid of specific facts.[38] Again, Defendants do not address whether Plaintiff has stated a viable § 1983 claim against Bylsma.

Turning to Plaintiff's conspiracy claim, Defendants aver that merely identifying the alleged conspirators does not immunize a conspiracy claim, which must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement to deprive the plaintiff of her rights.[39] Because Plaintiff makes no specific allegation regarding the nature of the alleged conspiracy or alleged agreement, Defendants argue, her conspiracy claim must be dismissed.[40]

---

[34] Rec. Doc. 17 at p. 1.

[35] *Id.*

[36] *Id.* at pp. 2–3.

[37] *Id.* at p. 3.

[38] *Id.*

[39] *Id.* at p. 3 (citing *Rouse v. Benson*, 193 F.3d 936, 943 (8th Cir. 1999)).

[40] *Id.*

Defendants next argue that Plaintiff is not entitled to punitive damages under any statute because the Port, as a political subdivision, cannot be subjected to punitive damages.[41]  Moreover, Defendants reaver that under Lousiniana law, a plaintiff has no cause of action for punitive damages except where authorized by statute, and that no such statute applies here.[42]   According to Defendants,  Plaintiff has failed to allege "outrageous conduct," and her IIED claim should therefore be dismissed.[43] Finally, with respect to Plaintiff's Title VII and ADA claims, Defendants assert that here, unlike in *Hilliard*, Mays has not received an EEOC right-to-sue letter at any time or for any of her claims.[44]

### III. Law and Analysis

A.      ***Standard on a Rule 12(b)(6) Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[45] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[46] "Factual allegations must be enough to raise a right to relief above the speculative level."[47] A claim is facially plausible when the plaintiff has pleaded facts that allow the

---

[41] *Id.* at p. 4.

[42] *Id.*

[43] *Id.* at p. 5.

[44] *Id.* at p. 6.

[45] Fed. R. Civ. P. 12(b)(6).

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[47] *Twombly*, 550 U.S. at 556.

court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[48]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[49] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[50] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[51] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[52] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[53] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[54] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[55] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim

---

[48] *Id.* at 570.

[49] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

[51] *Id.* at 679.

[52] *Id.* at 678.

[53] *Id.*

[54] *Id.*

[55] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

must be dismissed.[56]

**B.    *Analysis***

### 1.    Plaintiff's Title VII, ADA, and State Law Claims against Bylsma

Defendants move to dismiss Plaintiff's Title VII, ADA, and state law claims against Bylsma, arguing that individual employees cannot be held liable under these causes of action. Plaintiff does not appear to oppose dismissal of these claims against Bylsma in his individual capacity.[57]  District Courts may grant an unopposed motion as long as the motion has merit.[58]

Title VII of the Civil Rights Act, as amended,  prohibits an employer from discriminating against an individual on the basis of race, color, sex, national origin, or religion with respect to hiring, discharge, compensation, promotion, classification, training, apprenticeship, referral for employment, or other terms, conditions, and privileges of employment.[59] Similarly, the ADA prohibits discriminatory conduct by a "covered entity," which is defined to include employers, employment agencies, labor organizations, and joint labor-management committees.[60] Under both Title VII and the ADA, an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person, ..."[61]  This definition precisely

---

[56] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[57] The Court notes that Plaintiff has not addressed any of these claims in her memorandum in opposition to the pending motion, nor has she requested leave from the Court to file any additional briefing in this matter or to amend her complaint.

[58] *See Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

[59] 42 U.S.C. § 2000(e) et seq. (emphasis added).

[60] 42 U.S.C. § 12112(a); § 12111(2).

[61] *Id.* § 12111(5)(A); *see Roman–Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 51 (1st Cir.2011) (citing 42 U.S.C. § 2000e(b)).

mirrors the definition of an employer under Title VII.[62]

The Fifth Circuit has consistently held that there is no individual liability for employees under Title VII.[63] "While Title VII's definition of the term employer includes "any agent" of an employer, Congress's purpose was merely to import respondeat superior liability into Title VII."[64] Thus, an employee or supervisor faces Title VII liability solely in his official capacity.[65] Because an official-capacity suit against a supervisor or other individual is actually a suit against the employing corporation,[66] a plaintiff may not maintain a Title VII action against both an employer and its agent in an official capacity.[67] Therefore, as long as the corporate employer is named as a defendant, individual employees cannot be liable to a plaintiff in either their personal or official capacities.[68] Other courts in this District have recently concluded that the considerations precluding individual liability under Title VII apply with equal force in ADA actions.[69] Accordingly, the Court

---

[62] *See Roman–Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 51 (1st Cir. 2011) (citing 42 U.S.C. § 2000e(b)).

[63] *Id.* at 381, n. 1 (citing *Smith v. Amedisys Inc*., 298 F.3d 434, 448-49 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII.")).

[64] See *Smith*, 298 F.3d at 448 (citing *Indest v. Freeman Decorating, Inc*., 164 F.3d 258, 262 (5th Cir.1999))

[65] *See Dixon v. Primary Health Servs. Ctr*., No.10–1490, 2011 WL 1326841, at *2 (W.D.La. Mar. 3, 2011) (*citing Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990) ("Only when a public official is working in an official capacity can that official be said to be an "agent" of the government."))

[66] *Indest*, 164 F.3d at 262.

[67] *Smith*, 298 F.3d at 449.

[68] *Id.*

[69] *See Lefort v. Lafourche Parish Fire Prot. Dist. No. 3*, No. 14-672, 2014 WL 3893312 (E.D. La. Aug. 8, 2014) (Vance, J.);  Franklin v. City of Slidell, 936 F.Supp.2d 691, 703 (E.D.La. 2013) (Barbier, J.) ("[T]he ADA definition of 'employer' mirrors the Title VII definition.  Although the Fifth Circuit has not directly addressed the question of whether an employer's agent or employee may be held liable under the ADA, this Court recently concluded that in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit, individuals are not subject to liability under Title I of the ADA. Thus, to the extent that Plaintiff is asserting claims against the Employee

finds that Bylsma may not be held liable in his personal capacity under either Title VII or the ADA.

Moreover, since Plaintiff is suing the Port for discrimination under both Title VII and the ADA, she

cannot also maintain an action against Bylsma in his official capacity. The Court therefore dismisses

Plaintiff's Title VII and ADA claims against Bylsma in both his individual and official capacities.

### b.        State Law Claims

Plaintiff appears to claim that Bylsma violated Louisiana revised statutes § 23:1006 – which

was repealed in 1997 –  and 51:2231.[70] To the extent that Plaintiff seeks to bring a claim against

Bylsma under Louisiana's current employment discrimination statute, La. Rev. Stat. §  23:301,  the

Court finds that such a claim must be dismissed. Although section 23:301 prohibits intentional

discrimination in employment by employers, the statute defines "employer" as:

> a person, association, legal or commercial entity, the state, or any state agency,
> board, commission, or political subdivision of the state receiving services from an
> employee and, in return, giving compensation of any kind to an employee. The
> provisions of this Chapter shall apply only to an employer who employs twenty or
> more employees within this state for each working day in each of twenty or more
> calendar weeks in the current or preceding calendar year.

Similarly,  Louisiana Revised Statute  51:2231 provides for liability only against employers, and

does not provide a cause of action against supervisors in their individual capacities.[71] Stated

differently, for purposes of employment discrimination cases "employer" has been specifically

defined, and to satisfy that definition one must (1) receive services from the employee and in return

give compensation to that employee, and (2) meet the requisite number of employees prescribed by

---

Defendants under the ADA, the Court finds that they are not legally cognizable.").

[70] Rec. Doc. 1 at ¶ 2.

[71] *See Jones v. GeoEngineers, Inc.*, 2011 WL 1347989, at *5 (M.D. La. Apr. 8, 2011) (listing cases).

statute.[72] Plaintiff has not alleged that Bylsma paid her wages or that he had employees of any number; in fact, Plaintiff has alleged solely that Bylsma is or was a supervisor employed by the Port.[73] He therefore does not fit the definition of "employer" set forth under either statute, and therefore Plaintiff's claims against him pursuant to the Louisiana employment discrimination statutes, must be dismissed.

### 2.    Plaintiff's Title VII and ADA Claims against the Port

Defendants argue that Plaintiff's Title VII and ADA claims against the Port should be dismissed because she has not received a right-to-sue letter from the EEOC, and has therefore failed to exhaust administrative remedies prior to filing this lawsuit.[74] In response, Plaintiff concedes that she has not received a right-to-sue notice from the EEOC, though she has filed charges that "encompass all Ms. Mays other Title VII and ADA claims."[75]

The Fifth Circuit has instructed that receipt of a right-to-sue letter is required in order to bring an action under the ADA or Title VII in federal district court.[76] The ADA incorporates by reference the procedures applicable to actions under Title VII, 42 U.S.C. § 2000e, which provides:

> The powers, remedies, and procedures set forth in 2000e–4, 2000e–5, 2000e–6, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this subchapter.[77]

---

[72] *Dubois v. Cetco Energy Servs., Co. LLC*, 14-2396, 2015 WL 569854, at *4 (W.D. La. Feb. 9, 2015).

[73] Rec. Doc. 1 at p. 4.

[74] Rec. Doc. 8-1 at p. 18.

[75] Rec. Doc. 13 at p. 4.

[76] *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996).

[77] 42 U.S.C. § 12117(a).

Section 2000e–5(e)(1) provides that, before a plaintiff can commence a civil action under Title VII in federal court, she must file a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice.[78] Moreover, § 2000e–5(f)(1) provides that a civil action must be commenced "within ninety days" after the charging party has received a "right-to-sue" letter from the EEOC or state or local agency.[79]

In her complaint, Plaintiff alleges that "[b]ecause of the hostile work environment created by the Port's failure to take immediate and appropriate corrective action, Ms. Mays filed a charge of discrimination with the [EEOC] on December 4, 2013."[80] Plaintiff attaches to her memorandum in opposition a Louisiana Commission on Human Rights "Charge of Discrimination" form dated February 11, 2014[81] and an EEOC intake questionnaire dated April 9, 2014.[82] Notwithstanding the discrepancies between the date alleged in the complaint and those attached to the memorandum, Plaintiff does not allege that she has received a right-to-sue letter from the EEOC as to any of her claims. In fact, she expressly states that she has *not* received a right-to-sue letter.[83]

Plaintiff's reliance on *Hilliard v. Parish*[84] does not change this result. In that case, another

---

[78] 42 U.S.C. § 2000e–5(e)(1); *see, e.g., Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983) (although  filing of EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court").

[79] 42 U.S.C. § 2000e–5(f)(1); *see Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 120 (5th Cir. 1980).

[80] Rec. Doc. 1 at p. 5.

[81] Rec. Doc. 13-1 at p. 1.

[82] *Id.* at pp. 2–5.

[83] Rec. Doc. 13 at p. 4. Plaintiff has never requested leave to file any supplemental briefing with this Court or otherwise notified the Court that she has received a right-to-sue letter subsequent to filing her memorandum in opposition to the pending motion.

[84] *Hilliard v. Parish*, 991 F.Supp.2d 769 (E.D. La. 2014) (Milazzo, J.).

court in this District determined that receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action was pending, cures the initial failure to exhaust administrative remedies. Here, in contrast, Plaintiff has not alleged that she has received a right to sue letter at all, either before or after filing this lawsuit.  Since Plaintiff has apparently not received a right-to-sue letter from the EEOC, she has not exhausted administrative remedies prior to bringing this lawsuit, and her Title VII and ADA claims should be dismissed.

Dismissal is a harsh remedy, however, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[85] Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend her complaint.[86] Accordingly, the Court will grant Plaintiff leave to amend her complaint, if she chooses to do so, to sufficiently allege her Title VII and ADA claims against the Port, including whether she has exhausted administrative remedies with respect to those claims.

### 3.    Plaintiff's Claim for Intentional Infliction of Emotional Distress

An IIED claim requires a showing that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff's emotional distress was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.[87]  A claim for IIED requires a plaintiff to allege extreme and outrageous conduct.[88] "The conduct must be so outrageous in character, and so extreme in degree,

---

[85] *Beanal v. Freeport-McMoran, Inc,* 197 F.3d 161, 164 (5th Cir. 1999).

[86] See *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment.'") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[87]  *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007).

[88] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[89] "Merely tortious or illegal conduct does not rise to the level of extreme and outrageous."[90]

Although activity in the Louisiana workplace environment can give rise to a cause of action for IIED, "this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time."[91] The Louisiana Supreme Court described the type of conduct that could give rise to a meritorious claim of intentional infliction of emotional distress in *White v. Monsanto Co.*:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."[92]

Here, Plaintiff alleges that Defendants caused her severe emotional distress "in that they refused to take appropriate action notwithstanding the fact they [sic] had notice from Ms. Mays' mental healthcare provider that Ms. Mays' was [sic] suffering from mental health problems that were 'markedly worsened' by occurrences in the workplace."[93] As a matter of law, none of the facts alleged by Plaintiff rise to the level of outrageous conduct necessary to recover for a claim for IIED.

---

[89] *Id.*

[90] *W.T.A. v. M.Y.*, 2010-839 (La. App. 3 Cir. 3/9/11), 58 So. 3d 612, 616.

[91] *King v. Bryant*, 2001–1379, pp. 3–4 (La.App. 3 Cir. 7/10/02); 822 So.2d 214, 217.

[92] 585 So.2d at 1209 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

[93] Rec. Doc. 13 at p. 3.

Even construing the allegations in the complaint as true, Plaintiff has not alleged any facts that the two instances of alleged sexual harassment which occurred more than two years apart rise beyond "insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[94] Moreover, Plaintiff nowhere alleges facts suggesting that the Defendants intended to inflict severe emotional distress or could have foreseen that such distress would result. Thus, Plaintiff has failed to allege at least two of three elements to state a claim for IIED.[95] Considering that dismissal is a harsh remedy, the Court will grant Plaintiff leave to amend her complaint, if she chooses to do so, to sufficiently allege her IIED claims against both the Port and Bylsma.

### 4.    Plaintiff's Conspiracy Claim

Plaintiff alleges that the "discriminatory and complained of acts of defendants constitute a conspiracy to deprive Ms. Mays of her rights and privileges in violation of 42 U.S.C. §§ 1981 and 1985."[96] Section 1985(3) provides, in pertinent part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... or to injure any citizen in person or property on account of such support or advocacy; ... if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.[97]

*In Griffin v. Breckenridge*, the Supreme Court held that § 1985(3) has no state action

---

[94] *See White*, 585 So.2d at 1209.

[95] *See Hammond*, 574 So. 2d at 525.

[96] Rec. Doc. 1 at p. 6.

[97] 42 U.S.C. § 1985.

requirement, and thus reaches private conspiracies.[98]   In order to prove a private conspiracy in

violation of § 1985(3), a plaintiff must show that (1) some racial (or perhaps otherwise class-based,

invidiously discriminatory) animus lay behind the conspirators' action, and (2) the conspiracy aimed

at interfering with federal rights that are protected against private, as well as official,

encroachment.[99]   Plaintiff alleges that Defendants were motivated by her race  when they allegedly

conspired to deprive her of her civil rights.[100] However, the operative facts of an alleged conspiracy

under  § 1985(3) must be pled with specificity;  conclusory allegations such as those present here

lack the requisite specificity to support a conspiracy claim.[101] Plaintiff has therefore failed to state

a conspiracy claim upon which relief may be granted. Again, the Court will grant Plaintiff leave to

amend her complaint, if she chooses to do so, to sufficiently allege her conspiracy claim against the

Port and Bylsma.[102]

### 5.      Plaintiff's Claims under 42 U.S.C. § 1983

In *Monell v. Department of Social Services*, the United States Supreme Court held that

municipalities and municipal officials sued in an official capacity may be held liable under § 1983.[103]

---

[98] 403 U.S. 88 (1971).

[99] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) (section 1985(3) provides "a civil cause of action when some otherwise defined federal right ... is breached by a conspiracy in the manner defined").

[100] *See* Rec. Doc. 1 at ¶ XVIII.

[101] The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) ("Allegations that are merely conclusory, without reference to specific facts, will not suffice.").

[102] See *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment.'") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[103] *Monell v. New York City Dept. Of Social Serv.*, 436 U.S. 658, 689 (1978).

18

To maintain a § 1983 claim against a municipality, a plaintiff must show that officials acted in accordance with an official policy or custom.[104] Thus, municipalities are not vicariously liable for rights violations committed by their employees, but they are liable whenever "their official policies cause their employees to violate another person's constitutional rights."[105] The Fifth Circuit has instructed that:

> ... it is not enough for a § 1983 plaintiff to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.[106]

Therefore, Plaintiff must show not only that her constitutional rights were violated, but that the Port was the "moving force" behind her injury.[107]

A plaintiff asserting a section 1983 claim against a municipal official in his official capacity or a section 1983 claim against a municipality "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation."[108] The Fifth Circuit defines an "official policy" as:

---

[104] *James v. Texas Collin Cnty.*, 535 F.3d 365, 375 (5th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658 (1978)).

[105] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 923 (1988); *see also Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

[106] *Brown*, 117 S.Ct. at 1388.

[107] *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) ("Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation."); *see also Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) ("[M]unicipal liability ... requires proof of ... a policy maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom."); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1243 (5th Cir.1993) (describing several ways to meet this burden).

[108] *McClure v. Biesenbach*, 355 F. App'x 800, 803 (5th Cir. 2008) (*citing Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

19

1.   A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority; or

2.   A persistent, widespread practice of officials or employees which although not authorized by officially adopted and promulgated policy is so common and well-settled as to constitute a custom that fairly represents the entity's policy.[109]

"[A] single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity."[110] "State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity."[111] However, the Supreme Court has expressly prohibited the application of a heightened pleading standard to section 1983 claims against municipalities.[112]  A plaintiff need only comply with notice pleading requirements by presenting a "short and plain statement of the claims showing that the pleader is entitled to relief."[113] However, a "plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[114] "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."[115]

Here, Plaintiff has failed to identify any official policy or custom that caused her alleged injuries. Her conclusory allegations in her complaint that Defendants violated § 1983 by "refus[ing]

---

[109] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir .2002) (brackets and ellipses omitted).

[110] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).

[111] *Id.*

[112] *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

[113] *Id.*

[114] *Colle v. Brazos Cnty., Tex.,* 981 F.2d 237, 245 (5th Cir. 1993).

[115] *Spiller*, 130 F.3d at 167.

to process properly Ms. Mays' prescription for medical leave"[116] and  by "demonstrat[ing] a deliberate indifference to Ms. Mays' constitutionally protected rights"[117] fails to set forth facts showing the existence of "a persistent, widespread practice of officials" that is "so common and well-settled as to constitute a custom that fairly represents the entity's policy."[118] However, Plaintiff alleges in her opposition memorandum that "the entire management team failed to take appropriate action"[119]  and  that "their official policies cause their employees to violate another person's constitutional rights."[120]  This, alone, is insufficient considering that Plaintiff does not allege facts explaining how, or identifying which, official policy caused her alleged injuries. The Court finds that Plaintiff has failed to state a claim upon which relief may be granted with respect to her § 1983 claims against both the Port and Bylsma.[121] Again, the Court will grant Plaintiff leave to amend her complaint, if she chooses to do so, to sufficiently allege her § 1983 claim against both the Port and Bylsma.[122]

### 6.        Plaintiff's Request for Punitive Damages

Defendants seek dismissal of Plaintiff's request for punitive damages with respect to each

---

[116] Rec. Doc. 1 at p. 9.

[117] *Id.* at p. 10.

[118] *See Cozzo*, 279 F.3d at 289–90.

[119] Rec. Doc. 13 at p. 2.

[120] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 923 (1988); *see also Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

[121] The Court notes that Defendants do not provide any argument with respect to Plaintiff's § 1983 claim against Bylsma.

[122] See *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment.'") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

theory of relief. 42 U.S.C. § 1981 a(b)(1) authorizes punitive damages in discrimination cases, unless the defendant is a government, government agency, or political subdivision of the state.  Courts in this circuit have determined that this statute shields a political subdivision from liability for punitive damages under the ADA,[123]  §  1981,[124] Title VII,[125]  and § 1983,[126] and § 1985.[127]  Accordingly, the Court grants the pending motion to dismiss Plaintiff's request for punitive damages under these theories from the Port.[128] Additionally, for the reasons stated above, Bylsma cannot be held liable in his individual or official capacities for a violation of Title VII or the ADA, and, accordingly, Plaintiff cannot recover punitive damages from Bylsma under either theory. However, the Court notes that neither Defendants nor Plaintiff addresses whether punitive damages may be recoverable against Bylsma under either § 1981 or § 1985; accordingly, the Court will deny the pending motion with respect to whether punitive damages are available as to those claims.

Plaintiff is additionally unable to recover punitive damages against either Defendant herein under FMLA or Louisiana state law.  FMLA sets forth the types of damages recoverable under 29 U.S.C. § 2617(a), creating liability for damages only for actual monetary losses.[129] As such, FMLA

---

[123] *Liner v. Hosp. Serv. Dist. No. 1 of Jefferson Parish*, 230 Fed. Appx. 361, 365 (5th Cir. 2007).

[124] *Id.*

[125] *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465–66 (5th Cir. 2001) ("[Title VII] precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions.")

[126] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

[127] *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1270–71 (7th Cir. 1984).

[128] Plaintiff appears to concede that she is not entitled to punitive damages pursuant to Title VII, ADA,  § 1981, and § 1983. *See* Rec. Doc. 13 at p. 3.

[129] 29 U.S.C. § 2617(a); *See also Oby v. Baton Rouge Marriott*, 329 F. Supp .2d 772, 788 (M.D. La. 2004)

22

does not provide for recovery of punitive damages.[130] Finally, Louisiana has a general public policy against the award of punitive damages unless specifically provided for by statute.[131] Louisiana statutes permit punitive damages only for child pornography, drunk driving and sexual abuse of a child.[132] Plaintiff has not alleged that Defendants have committed any of these acts that would expose them to liability for punitive damages under Louisiana law. Accordingly, Plaintiff's request for punitive damages against either Defendant under FMLA and Louisiana law is dismissed as a matter of law.

## V. Conclusion

Based on the foregoing, the Court has determined that Plaintiff has not and cannot state a claim upon which relief may be granted against Bylsma under Title VII, the ADA, or state discrimination statutes. Therefore, those claims are dismissed. Moreover, Plaintiff cannot recover punitive damages from Bylsma in his official or individual capacity under those theories. Therefore, those punitive damages claims are dismissed as well. Additionally, Plaintiff's request for punitive damages for Defendants' alleged FMLA violation is also dismissed.  Also, the Court dismisses with prejudice Plaintiff's claim for punitive damages against the Port under all theories of recovery.

Dismissal is a harsh remedy, however, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[133] Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend her

---

[130] *Oby*, 329 F. Supp.2d 772; *accord Farrell v. Tri–County Metropolitan Transp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008).

[131] *Ross v. Conoco, Inc*., 828 So.2d 546, 555 (La. 2002) (citing *Ricard v. State*, 390 So.2d 882 (La. 1980); *Killebrew v. Abbott Labs*., 359 So.2d 1275 (La. 1978)).

[132] *See* La. Civ. Code arts. 2315.3; 2315.4; 2315.7 (2011).

[133] *Beanal v. Freeport-McMoran, Inc,* 197 F.3d 161, 164 (5th Cir. 1999).

complaint.[134] Accordingly, the Court will grant Plaintiff leave to amend her complaint, if she chooses to do so, to sufficiently allege her Title VII and ADA claims against the Port;  her § 1983 claim against Bylsma; her request for punitive damages against Bylsma under  § 1981,  § 1983, and/or § 1985; and her conspiracy and IIED claims against both the Port and Bylsma. If Plaintiff chooses to amend her complaint, she is ordered to specifically allege the capacity in which she is suing both Bylsma and Rodriguez. If she fails to do so, or if she fails to provide sufficient factual support for each element of each allegation, then the Court will dismiss with prejudice the foregoing claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Rule 12(b)(6) Partial Motion to Dismiss"[135] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**: (1) Plaintiff's Title VII, ADA, and state discrimination law claims against Defendant Bylsma; (2) Plaintiff's request for punitive damages against the Port; and (3) Plaintiff's request for punitive damages against Bylsma for violations of Title VII, ADA, state discrimination laws, and FMLA.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend her complaint within ten days of this Order, or by March 27, 2015.

**NEW ORLEANS, LOUISIANA**, this 8th  day of March, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[134] See *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[135] Rec. Doc. 8.