UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIM L. MAYS** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-1014** |
| **BOARD OF COMMISSIONERS PORT OF NEW ORLEANS, et al.** | **SECTION: "G"(3)** |

<u>**ORDER**</u>

Before the Court is Defendants Board of Commissioners, Port of New Orleans' (the "Port") and Ryan Bylsma's ("Bylsma") (collectively, "Defendants") "Motion for Summary Judgment."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

**I. Background**

A.    *Factual Background*[2]

According to the original complaint in this matter, Plaintiff Kim Mays is an African-American female and veteran of the United States Army who suffers from post-traumatic stress disorder ("PTSD").[3] She initially filed this lawsuit against her employer, the Port, as well as against two Port employees: Bylsma and Armand Rodriguez ("Rodriguez"), although all claims against

---

[1]  Rec. Doc. 64.

[2] Local Rule 56.1 provides that every motion for summary judgment must be accompanied by a separate and concise statement of the material facts which the moving party contends present no genuine issue. Local Rule 56.2 states that any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement. In this case, Mays has submitted a one-page "Statement of Contested Facts," wherein she alleges that seven of the 55 facts listed in Defendants' statement of uncontested material facts are "indeed contested." Rec. Doc. 69-1 at p. 1. However, Mays does not attempt to controvert most of the facts presented in Defendants' statement. Accordingly, the Court considers the facts recited here to be uncontested, unless otherwise noted.

[3]  Rec. Doc. 1.

1

Rodriguez were dismissed with prejudice on July 6, 2015, and he is no longer a party to this case.[4]

Plaintiff initially alleged that Defendants violated her rights pursuant to 42 U.S.C. §§ 1981, 1983, and 1985; Title VII; the Americans with Disabilities Act ("ADA"); the Family and Medical Leave Act ("FMLA"); and Louisiana state discrimination statutes. She additionally brought causes of action for intentional infliction of emotional distress ("IIED") and conspiracy. The Court has twice granted motions to dismiss in this case, dismissing the claims for IIED and conspiracy. Therefore, the only claims remaining in the case are Mays' claims pursuant to Title VII, the ADA, the FMLA, state law discrimination, and retaliation.[5]

Mays was first hired by the Port in June 2011 as an Administrative Coordinator.[6] Plaintiff alleges in her original complaint that, in July 2011, Rodriguez made an "inappropriate sexually oriented remark" to her.[7] She alleges that she reported the incident to her immediate supervisor, but claims that "the only actions taken by the Port's management was [sic] to counsel Mr. Rodriguez and request that he apologize."[8] On August 1, 2012, Mays complained of generalized race discrimination.[9] On August 10, 2012, Human Resources responded to the complaint, but Mays did not follow up afterward.[10]

---

[4] Rec. Doc. 47.

[5] *Id.*

[6] Rec. Doc. 64-1 at p. 1.

[7] Rec. Doc. 1 at p. 3.

[8] *Id.* at pp. 3–4.

[9] Rec. Doc. 64-1 at p. 2.

[10] *Id.*

2

Bylsma became Mays' supervisor toward the end of 2013 or beginning of 2014.[11] Defendants contend, and Plaintiff contests, that in anticipation of Plaintiff eventually coming under his direct supervision, Bylsma made plans in March 2013 to have Plaintiff share an office with another administrative coordinator near Bylsma's office.[12] Plaintiff asserts that on November 23, 2013, Rodriguez sent her "an inappropriate e-mail that was sexual in nature," which she reported to Bylsma, who was her supervisor at the time.[13] Defendants claim, and Plaintiff contests, that the e-mail in question was sent to a group of individuals, including males and females, and both former and current Port employees.[14] Mays did not read the body of the e-mail, but only the subject line.[15] On November 26, 2013, Plaintiff alleged that she had been sexually harassed by Rodriguez's e-mail.[16] On that same date, Gwen Hager ("Hager"), who worked in human resources, asked Mays about the e-mail address used by Rodriguez.[17] On December 2, 2013, Rodriguez was issued a restriction forbidding further e-mails to Mays, regardless of content, and limiting all other communication to essential work communications.[18] The following day, on December 3, 2013, Hager e-mailed Plaintiff to set up a time to discuss her complaint.[19] Mays did not respond to Hager's

---

[11] *Id.*

[12] *Id.*; Rec. Doc. 69-1.

[13] Rec. Doc. 1 at p. 4.

[14] Rec. Doc. 64-1 at p. 3.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

e-mail, and after receiving Rodriguez's e-mail, Mays did not see Rodriguez in person again.[20]

On December 4, 2013, Plaintiff's treating physician, Dr. Costales, requested the Port allow Plaintiff "reasonable accommodation of working from home; working from space where [Rodriguez] is not; or moving [Rodriguez] from her workspace," and advised that Plaintiff was not released to work.[21] On December 6, 2013, Bylsma placed Rodriguez on suspension pending an investigation pursuant to Civil Service Rule 12.10.[22] Plaintiff was informed on December 8 and 11, 2013 that Rodriguez had been suspended and was no longer at work.[23] Rodriguez never returned to the Port and retired on January 15, 2014.[24] However, Plaintiff informed Bylsma that it was "impossible" for her to come up with a return to work plan on December 11, 2013, and on the following day, December 12, 2013, Bylsma requested that the Port proceed by terminating Mays.[25]

Defendants contend, and Plaintiff contests, that the Port issued a pre-deprivation notice under Civil Service Rule 12.6(a)(1) to Mays on December 13, 2013, and that after the notice had been mailed, the Port received notice from the EEOC that Mays had filed a charge with the agency.[26] Plaintiff alleges in her original complaint, however, that she filed a charge with the EEOC on December 4, 2013, and that in retaliation for filing that charge, the Port issued a "pre-deprivation notice recommendation for a non-disciplinary removal," removed her name plate from her office

---

[20] *Id.*

[21] Rec. Doc. 64-1 at p. 4.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

door, packed her personal items from her office, removed her name from the organizational chart, and conspired to place her in a shared office.[27] On December 18, 2013, Plaintiff notified the Port that she was exercising her FMLA rights.[28] Her leave request was approved, as was a prior FMLA leave request in August and September of 2013.[29]

On January 16, 2014, the Port rescinded the pre-deprivation notice.[30] Although Mays filed a Civil Service appeal regarding the December 13, 2013 pre-deprivation notice, the Civil Service Commission dismissed her appeal as premature because she had not been removed from her position.[31] By the time Plaintiff returned to the Port on December 23, 2013, her nameplate had been restored.[32] Furthermore, Mays received a restricted leave memorandum on December 23, 2013 requiring her to get pre-approval for annual leave and to provide medical documentation for sick leave.[33] Mays continued to take and be granted leave after being placed on a restricted leave policy.[34] Defendants contend, and Plaintiff contests, that Rodriguez was also placed on a restrictive leave policy by the Port from April 24, 2006 through July 8, 2007.[35]

On April 8, 2014, Dr. Costales requested that Plaintiff be given the accommodation of

---

[27] Rec. Doc. 1 at pp. 5–6.

[28] Rec. Doc. 64-1 at p. 4.

[29] *Id.* at p. 5.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*; Rec. Doc. 69-1 at p. 1.

moving back into her personal office or another private space.[36] The Port contacted Plaintiff on April 10, April 21, and May 8 of 2014 regarding her ADA accommodation request, and asked Plaintiff to complete a medical authorization so that the Port could evaluate the request.[37] Defendants contend, and Plaintiff contests, that Mays did not respond to the Port's requests for ADA documentation.[38] Defendants also assert, and Plaintiff contests, that on May 27, 2014, Plaintiff's therapist contacted Bylsma and reported that Plaintiff had made a threat against Bylsma and advised that he should take precautions and contact law enforcement.[39]

Mays has been on leave from Port without pay since May 2014.[40] She was never demoted or suspended, and her pay rate did not decrease.[41]

**B.    *Procedural Background***

Plaintiff filed the original complaint in this matter on May 2, 2014.[42]  On June 17, 2014, Port and Bylsma filed a "Rule 12(b)(6) Partial Motion to Dismiss."[43] In a March 18, 2015 Order, the Court: (1) dismissed Plaintiff's Title VII and ADA claims against Bylsma in his individual and official capacities; (2) dismissed Plaintiff's state law discrimination claims against Bylsma; (3) granted Plaintiff leave to amend her complaint to allege Title VII and ADA claims against the Port;

---

[36] Rec. Doc. 64-1 at p. 5.

[37] *Id.* at p. 6.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] Rec. Doc. 1.

[43] Rec. Doc. 8.

(4) granted the Plaintiff leave to amend her complaint to sufficiently allege IIED claims against the Port and Bylsma; (5) granted Plaintiff leave to amend to sufficiently allege her conspiracy claim under sections 1981 and 1985 against the Port and Bylsma; (6) granted Plaintiff leave to amend to sufficiently allege her section 1983 claim against the Port and Bylsma; (7) dismissed Plaintiff's request for punitive damages under the ADA, Title VII, and 42 U.S.C. §§ 1981, 1983, and 1985 against the Port; (8) dismissed Plaintiff's claim for punitive damages against Bylsma under Title VII and the ADA; and (9) dismissed Plaintiff's claim for punitive damages under the FMLA and Louisiana state law against the Port and Bylsma.[44]

Plaintiff subsequently filed three amended complaints.[45] On April 16, Defendants filed another motion to dismiss.[46] Armand Rodriguez filed his own motion to dismiss on May 11, 2015.[47] On July 6, 2015, the Court granted Rodriguez's motion to dismiss in full and Defendants' motion in part, thereby dismissing with prejudice Plaintiff's claims for IIED and for violations of 42 U.S.C. §§ 1981, 1983, and 1985 against both Port and Bylsma, as well as her request for punitive damages against Bylsma.[48] Thus, the claims remaining in the case are Mays' claims pursuant to Title VII, the ADA, the FMLA, state law discrimination, and retaliation.[49]

On September 15, 2015, Defendants filed the pending motion for summary judgment on all

---

[44] *Id.*

[45] Rec. Docs. 28, 29, 33.

[46] Rec. Doc. 34.

[47] Rec. Doc. 36.

[48] *Id.*

[49] *Id.*

claims remaining in the case.[50] Plaintiff filed an opposition on September 22, 2015.[51] On September 29, 2015, Defendants sought leave of Court to file a reply,[52] which Plaintiff challenged.[53] On October 22, 2015, the Court rejected Plaintiff's challenge and granted leave for Defendants to file a reply.[54] On the same date, the Court granted leave for Plaintiff to file a sur-reply.[55]

## II. Parties' Arguments

### A. *Defendants' Arguments in Support of Summary Judgment*

#### 1. FMLA Claims

Defendants first argue, as a preliminary matter, that Mays testified that FMLA determinations at the Port were handled by Heather Horan in Human Resources, and that, as such, Mays' FMLA claim against Blysma should be dismissed.[56] Next, Defendants state that to establish a prima facie FMLA interference case, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant was an employer subject to the FMLA's requirements; (3) she was entitled to the leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA.[57] Defendants claim that Plaintiff cannot

---

[50] Rec. Doc. 64.

[51] Rec. Doc. 69.

[52] Rec. Doc. 76.

[53] Rec. Doc. 80.

[54] Rec. Doc. 97.

[55] *Id.*

[56] Rec. Doc. 64-2 at p. 8.

[57] *Id.* at pp. 8–9 (citing *Spears v. La. Dep't of Public Safety & Corrections*, 2 F. Supp. 3d 873, 877–78 (M.D. La. 2014)).

8

meet the fourth or fifth prong of the claim.[58] Defendants note that Plaintiff took a leave of absence in December 2013 and told the Port on December 11, 2013 that it was "impossible" to advise when she could return to work.[59] Defendants claim that on December 13, 2013, the Port issued a pre-deprivation notice advising Mays that her removal from employment had been recommended under Civil Service Rule 12.6(a)(1), governing "non-disciplinary" removals, and that she was given ten days to furnish a written response.[60] Defendants contend that on December 18, 2013, Mays responded to the notice and asserted for the first time that she was exercising her FMLA rights, after which the pre-deprivation notice was rescinded.[61] Therefore, Defendants argue, at the time the pre-deprivation notice was issued, Mays had not provided notice of her intent to take FMLA leave, but that once she did exercise her rights, the Port granted her FMLA request.[62] Thus, Defendants contend, Plaintiff fails to satisfy the fourth and fifth prongs of a proper FMLA interference claim.[63]

### 2.     ADA Claim

Defendants allege that to prevail on an ADA claim, Plaintiff must establish that: (1) she has a disability; (2) she is qualified for the position; and (3) she was discriminated against because of her disability.[64] Defendants aver that Mays cannot meet the third prong of the ADA claim because her first disability accommodation was granted and, regarding her second disability accommodation,

---

[58] *Id.* at p. 9.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at p. 10 (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011)).

9

she intentionally failed to engage in the interactive process to determine the appropriate ADA accommodation.[65]

According to Defendants, Dr. Costales submitted a request to the Port on December 4, 2013, seeking a reasonable accommodation for Mays that would allow her to work from home, remove her harasser from the workplace, or allow her to work from a space where the "identified male causing her distress is not."[66] Defendants allege that, despite Plaintiff's contention that the Port failed to provide the reasonable accommodation prescribed by Dr. Costales, the undisputed facts demonstrate that two days after Dr. Costales requested that Rodriguez be removed from the workspace or that Mays work from a space where he was not present, the Port suspended Rodriguez, who never returned to work at the Port.[67] Defendants contend that Plaintiff was informed of Rodriguez's suspension on both December 8 and 11, 2013, and that because she received the requested accommodation, she has no viable claim that the Port failed to accommodate her.[68]

Defendants next allege that after Rodriguez had been removed, Mays and her physician requested a second accommodation on April 8, 2014, specifically requesting that Mays move back into her personal office or other private space.[69] Defendants claim that two days after Dr. Costales submitted the second request, Marcella Villarreal ("Villarreal"), the Port Claims Manager/Safety Officer, contacted Mays and requested medical documentation.[70] Defendants claim that Villarreal

---

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at p. 11.

[69] *Id.*

[70] *Id.*

explained to Mays that she needed to sign an authorization for medical records, but that Mays did not respond to Villarreal.[71] According to Defendants, on April 21, 2014, Villarreal contacted Mays again and re-attached the requested release.[72] Nevertheless, Defendants contend, Mays did not respond to the second e-mail, and on May 8, 2014, Villarreal contacted Mays and advised her that the Port was unable to move forward with her accommodation request unless she provided the release.[73] Defendants claim that Mays once again did not respond to the e-mail and did not provide the release, and note that in Mays' deposition, Plaintiff admitted that she purposefully elected not to respond to the three disability accommodation request e-mails from the Port.[74]

Defendants contend that the ADA "provides a right to reasonable accommodation, not to the employee's preferred accommodation."[75] Quoting *Griffin v. United Parcel Service, Inc.*, Defendants argue that "[w]hen a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation."[76] Defendants contend that although courts may hold an employer liable for violating the ADA when they are unwilling to engage in a good faith interactive process, an employer cannot be found to have violated the ADA when the "informal, interactive process" breaks down due to the employee, rather than the employer.[77] Here, Defendants argue, Plaintiff

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.* at p. 12.

[75] *Id.* (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)).

[76] *Id.* (quoting *Griffin*, 661 F.3d at 224).

[77] *Id.* at pp. 12–13 (citing *Loulseged v. Azko Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999); *Griffin*, 661 F.3d at 224).

intentionally and repeatedly failed to authorize the Port to communicate with her medical provider and obtain medical documentation, and thus, her ADA claim must fail on its face.[78]

### 3.      Title VII/State Law Discrimination

#### i.      *Hostile Work Environment*

Next, Defendants argue that to establish a prima facie claim of hostile work environment under either federal or state law,[79] Plaintiff must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race, sex or disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[80] According to Defendants, courts employ a "totality of the circumstances" test that focuses on the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance.[81] Defendants aver that simple teasing, offhand comments, and isolated incidents, unless extremely serious, do not amount to discrimination, and therefore plaintiffs cannot sustain complaints based on the sporadic use of abusive language, gender-related jokes, or occasional teasing.[82]

Defendants contend that Plaintiff's allegations are "not sufficiently severe or pervasive to

---

[78] *Id.*

[79] Defendants contend that Louisiana's anti-discrimination statute is derived in part from federal law, and thus Louisiana courts look to federal jurisprudence to interpret Louisiana discrimination laws. *Id.* (citing *Mbarika v. Bd. of Supervisors of La. State Univ.*, 07-1136 (La. App. 1 Cir. 6/6/08); 992 So. 2d 551, 561).

[80] *Id.* at pp. 13–14 (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

[81] *Id.* at p. 14 (citing *Baker v. Fedex Ground Package Sys., Inc.*, 278 F. App'x 322, 328 (5th Cir. 2008)).

[82] *Id.* (citing *Cassey v. Coca-Cola Enters.*, 2006 WL 3862006, at *7–8 (W.D. La. Dec. 29, 2006); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

amount to an actionable hostile work environment."[83] According to Defendants, other courts in this Circuit have granted summary judgment in favor of employers where plaintiffs alleged numerous instances of conduct that "were far more egregious" than the claims in the instant case.[84] Finally, Defendants contend that the Fifth Circuit has affirmed the dismissal of hostile work environment claims in cases involving allegations of assault and actual physical contact.[85] Even taking all of the harassment allegations as true, Defendants aver, the Fifth Circuit jurisprudence dictates that such allegations are not sufficiently severe or pervasive to constitute a hostile work environment.[86]

### ii.    Discrimination

Next, Defendants state that Plaintiff's allegations of discrimination are similarly insufficient.[87] Defendants contend that Mays was never terminated or demoted, nor did she receive a reduction in wages.[88] In fact, Defendants claim, Mays was promoted and received a pay raise.[89]

---

[83] Specifically, Defendants summarize the Plaintiff's allegations of harassment as: "1) in 2011 she saw nude or bikini-clad pictures in Rodriguez's office; 2) that Rodriguez asked to help her to the bathroom in 2011; 3) that Rodriguez sent her and other co-workers an e-mail with a subject line 'Penis Surgery' in 2013 and she only read the subject line and not the body of the e-mail; 4) her name plate was removed from her door during her absence but replaced upon her return; 5) that the Port failed to investigate the Rodriguez e-mail; 6) during her leave her items were placed in a box; 7) when placed under a new supervisor he moved her from her private office space to a shared office space with another co-worker near him; 8) her supervisor gave her a Bridge/Train tracking project when no one else had previously done this task; 9) she was involved in a paper tussling incident with her supervisor for a 'few seconds' where she was not struck." *Id.* at pp. 14–15 (footnote omitted).

[84] *Id.* (citing *Hubbard v. La. Machinery Co., LLC*, 2006 WL 1004293, *1–4 (W.D. La. Apr. 17, 2006)).

[85] *Id.* at pp. 16–17 (citing *Shepherd v. Comptroller of Public Accounts of the State of Tex.*, 168 F.3d 871, 875 (5th Cir. 1999); *Derouen v. Carquest Auto Parts*, 275 F.3d 42 (5th Cir. 2001)).

[86] *Id.*

[87] *Id.* Defendants claim that Plaintiff has alleged that the Port: (1) did not remove Rodriguez from Mays' workspace; (2) failed to take immediate corrective action against Rodriguez; (3) removed Mays' name plate from her office door; (4) removed Mays' name from the organization chart; (5) packed Mays' personal items from her office; (6) placed her in a shared office; and (7) assigned Mays tasks to harass her. *Id.*

[88] *Id.*

[89] *Id.*

13

Defendants argue that under the *McDonnell Douglas* framework, to make out an actionable claim of discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment decision; and (3) someone outside of the protected class was treated more favorably.[90] Defendants note that Plaintiff has not shown, and cannot show, that other Port employees were treated more favorably.[91] Moreover, Defendants contend, the Fifth Circuit requires plaintiffs alleging an adverse employment action in a Title VII case to produce evidence of an "ultimate employment decision," which includes only actions such as "hiring, granting leave, discharging, promoting, or compensating."[92] Although the "ultimate employment decision" standard has been abrogated in the retaliation context, Defendants note, it is still used in the context of discrimination claims within the Fifth Circuit.[93] According to Defendants, the sole issue that could be actionable under Title VII would be Plaintiff's requests for leave, and Mays has admitted that all of her requests were granted.[94] Because her remaining allegations do not involve "ultimate employment decisions," Defendants argue, her Title VII discrimination claim fails.[95]

### 4.    Retaliation

According to Defendants, Plaintiff has failed to support a claim for retaliation.[96] Defendants

---

[90] *Id.* (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).

[91] *Id.* at n.23.

[92] *Id.* at p. 19 (citing *Smith v. Harvey*, 265 F. App'x 197, 202 (5th Cir. 2008)).

[93] *Id* at n.24 (citing *Smith*, 265 F. App'x at 202).

[94] *Id.*

[95] *Id.*

[96] *Id.* at pp. 19–20. Defendants summarize Plaintiff's allegations as follows: that in retaliation for her December 4, 2013 EEOC charge, (1) Mays was issued a pre-deprivation notice on December 13, 2013 that was later rescinded; (2) her name plate was removed from the door during her absence and replaced during her return; (3) personal items from her office were packed in a box; (4) her name was removed from an organizational chart; and

14

argue that under the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, Plaintiff

may establish a prima facie case of unlawful retaliation by showing that (1) she was engaged in an

activity protected by Title VII, the ADA, or the FMLA; (2) that an adverse employment action

occurred; and (3) a causal connection exists between the protected activity and the adverse

employment action.[97] Once the plaintiff makes a prima facie showing, Defendants claim, "the burden

then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for

its employment action."[98] At that stage, Defendants contend, the employer's burden is solely one of

production, not persuasion.[99] According to Defendants, if the employer meets that burden, the

plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true

and is instead a pretext for the real discriminatory or retaliatory purpose, which requires the plaintiff

to rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.[100] Defendants

contend that the third prong regarding causal connection was recently clarified by the U.S. Supreme

Court, which ruled that Title VII retaliation claims require proof that the desire to retaliate was the

"but-for cause" of the challenged employment action.[101] The Supreme Court's decision, Defendants

contend, overturned earlier Fifth Circuit precedent in which Title VII retaliation claims were

---

(5) she was placed in a shared office, which in sum were retaliatory and violated Title VII, the ADA, and the FMLA. *Id.*

[97] *Id.* at p. 20 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007); *Teffera v. N. Tex. Tollway Auth.*, 121 F. App'x 18 (5th Cir. 2004); *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).

[98] *Id.* (quoting *McCoy*, 492 F.3d at 557).

[99] *Id.* (citing *McCoy*, 492 F.3d at 557).

[100] *Id.* (citing *McCoy*, 492 F.3d at 557).

[101] *Id.* at pp. 20–21 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2521 (2013)).

governed by a less stringent causation test.[102] According to Defendants, the Court reasoned that a lesser standard could contribute to the filing of frivolous claims "and would make it far more difficult to dismiss dubious claims at the summary judgment stage."[103]

Here, Defendants contend, Plaintiff cannot show a causal connection between her protected activities and any adverse employment actions, because she admitted in her deposition that she did not have any information to challenge the Port's contention that it made the determination to issue her pre-deprivation notice on December 12, 2013, before it received notice of the EEOC charge she had lodged on December 4, 2013.[104] According to Defendants, the pre-deprivation notice, which the Port ultimately issued on December 13, 2013, was also issued before Mays invoked FMLA leave on December 18, 2013.[105] Furthermore, Defendants aver, the decision to move Plaintiff to a shared office occurred before the Rodriguez e-mail, before the EEOC charge, and before Mays invoked FMLA leave on December 18, 2013.[106] Defendants contend that, in early 2013, Bylsma decided he wanted the Port's administrative coordinator employees, who were under his direct supervision, to share an office and be located near him.[107]

Defendants allege that the Fifth Circuit has held that plaintiffs must produce "at least some evidence that the decisionmakers had knowledge of his protected activity," and that decisionmakers who were completely unaware of a plaintiff's protected activity could not be said to have retaliated

---

[102] *Id.* at p. 21.

[103] *Id.* at p. 21 (citing *Nassar*, 133 S. Ct. at 2531).

[104] *Id.* at pp. 21–22.

[105] *Id.* at p. 22.

[106] *Id.*

[107] *Id.*

against the plaintiff for engaging in that activity.[108] Thus, as a matter of law, Defendants contend, neither the pre-deprivation notice nor the shared office could amount to retaliation.[109]

Defendants state that Mays complained of alleged race discrimination in August 1, 2012, and that Human Resources responded to the complaint, but Mays did not follow up.[110] After the 2012 race complaint, Defendants aver, Mays was not retaliated against, and in fact was instead promoted and received several wage increases.[111] They argue that she requested FMLA leave in September of 2012 and that it was granted without incident, and therefore the fact that Mays had prior complaints of discrimination and prior FMLA leave granted suggests that she was not retaliated against for her 2013 FMLA leave or her 2013 EEOC charge.[112] Moreover, Defendants argue that Title VII plaintiffs cannot bring retaliation claims for "slights or minor annoyances," "personality conflicts at work that generate antipathy," and "snubbing by supervisors and co-workers."[113]

Next, Defendants contend that even if Plaintiff could make out a prima facie case of retaliation, she could not overcome the Port's legitimate, non-discriminatory and non-retaliatory reasons for the employment actions at issue.[114] Defendants reiterate that the office relocation was implemented because Mays' new supervisor, Bylsma, wanted both administrative coordinators to be located near him; that the pre-deprivation notice was issued pursuant to Civil Service Rule

---

[108] *Id.* (quoting *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003)).

[109] *Id.*

[110] *Id.* at p. 23.

[111] *Id.*

[112] *Id.*

[113] *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

[114] *Id.* at p. 24.

12.6(a)(1) and rescinded when Plaintiff advised that she was exercising her FMLA rights; and that at least six other Port employees, including white, black, male and female employees, received similar pre-deprivation notices.[115] Furthermore, Defendants aver, the name plate removal, packed up office, and organizational chart change were all part of the normal procedure performed when an employee is believed to be leaving the Port, and were not done out of retaliation.[116] According to Defendants, when Mays advised on December 18, 2013 that she had been cleared to work on December 23, 2013, she was permitted to return to work, and therefore Mays has not and cannot rebut the Port's legitimate, non-retaliatory business reasons.[117] Moreover, Defendants contend, Plaintiff has not and cannot offer evidence that "but for" her EEOC charge, FMLA leave, or disability, the employment actions at issue would not have occurred.[118]

**B.      *Plaintiff's Arguments in Opposition to Summary Judgment***

In opposition, Plaintiff argues that prior to December 2013, Defendants had no complaints about Ms. Mays' employment performance.[119] Mays claims that in November 2013, however, she was critical of her supervisor's handling of a discrimination complaint that she had filed against another employee, and that from that point onward, Bylsma began to retaliate against her.[120] According to Plaintiff, that retaliation took the form of work assignments, criticisms of her performance, failure to approve leave requests, removal of Mays from her private office, issuing her

---

[115] *Id.*

[116] *Id.*

[117] *Id.* at pp. 24–25.

[118] *Id.* at p. 25 n.29.

[119] Rec. Doc. 69 at p. 2.

[120] *Id.*

unwarranted pre-deprivation notices, refusing to provide her with a reasonable accommodation, barring her from her place of employment, and putting her on indefinite leave without pay.[121] Mays argues that genuine issues of material fact exist as to each of her claims, and therefore summary judgment should be denied.[122]

### 1.    FMLA Claims

Mays alleges that on December 4, 2013, her doctor informed Defendants that Mays was being treated and would not be able to return to work until she was released from her doctor's care.[123] According to Plaintiff, Bylsma, as Mays' supervisor, had the authority to classify her leave days, and because he was on notice that Mays' doctor had excused her from work, he should have properly classified the time off as FMLA time.[124] Plaintiff also contends that having her badge deactivated, her name taken off her office door and her belongings packed deprived her of "work benefits."[125]

### 2.    ADA Claim

Plaintiff argues that Defendants violated the ADA by failing to provide the reasonable accommodation requested by Mays.[126] According to Plaintiff, Defendants submitted to the Court a misleading document to prove that Villarreal had requested medical documentation from Mays.[127]

---

[121] *Id.*

[122] *Id.*

[123] *Id.* at p. 4.

[124] *Id.*

[125] *Id.* at p. 5.

[126] *Id.* at p. 2.

[127] *Id.* at p. 3.

Plaintiff contends that the "General Release Authorization" attached to Villarreal's e-mails clearly violated the ADA, as it was not directed to a particular health care provider and authorized the release of "all records pertaining to . . . any physical or emotional condition . . . ."[128] Citing *Barnett v. U.S. Air, Inc.*, Plaintiff contends it is a violation of the ADA for an employer to ask for complete medical records because they are likely to contain information that is unrelated to the disability at issue and the need for accommodation.[129] Plaintiff alleges that Villarreal's e-mails make it clear that Defendants would not engage in the requisite interactive process unless Mays signed the prohibited General Release Authorization.[130] Mays alleges that although she refused to sign the prohibited General Release Authorization, she continued to attempt to engage Defendants in the interactive process and continued to seek a reasonable accommodation of working in another area.[131]

### 3.      Retaliation

In defense of her retaliation claim, Plaintiff alleges that she was a good employee, that her last performance evaluation was "successful," and that her supervisor had never had problems with her performance.[132] However, after Mays questioned her supervisor's handling of a discrimination complaint she had filed, Plaintiff alleges, her relationship with Bylsma became difficult, and Bylsma acknowledged that Mays had accused him of retaliating against her.[133] Plaintiff claims that she filed a claim that Bylsma had become physically aggressive with her, and in retaliation, Bylsma refused

---

[128] *Id.*

[129] *Id.* (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1126 n.6 (9th Cir. 2000) (en banc).

[130] *Id.* at pp. 3–4.

[131] *Id.* at p. 4.

[132] *Id.*

[133] *Id.*

to classify her leave requests as leave without pay.[134] Mays alleges that Bylsma began to "micro manage" her and check up on her more than anyone else, that he performed other acts that eventually caused Mays to call him a "bully," and that the retaliation became so bad that Mays' doctor wrote a letter to Defendants complaining about Bylsma's retaliatory physically aggressive behavior.[135]

Finally, Plaintiff contends that the actions thus recited constitute violations of Title VII and state law and establish genuine issues of material fact regarding her claims.[136]

## C.   *Defendants' Arguments in Further Support of Summary Judgment*

### 1.   **FMLA Claims**

In reply Defendants argue that Plaintiff has not contested that she testified that the Port's FMLA determinations were handled by Heather Horan in Human Resources and that the remaining FMLA claim against Bylsma should be dismissed.[137] Defendants argue that because Plaintiff has not submitted any summary judgment evidence challenging Bylsma's dismissal, Plaintiff's FMLA claim against him should be dismissed with prejudice.[138]

Next, Defendants argue that Plaintiff must show that "she gave proper notice of her intention to take FMLA leave" and that her employer "denied her the benefits to which she was entitled under the FMLA."[139] Defendants claim that the Port ultimately classified her leave time as FMLA leave

---

[134] *Id.*

[135] *Id.*

[136] *Id.* at pp. 5–6.

[137] Rec. Doc. 98 at p. 1.

[138] *Id.*

[139] *Id.* at p. 2 (citing *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013)).

and rescinded the pre-deprivation notice.[140] Thus, Defendants argue, Plaintiff was not deprived of her FMLA benefits, and has not put forth evidence that she was discouraged from taking FMLA leave, or that she gave proper notice of her intention to take FMLA leave.[141]

### 2. ADA Claim

Next, Defendants contend that Plaintiff relies on a Ninth Circuit case that was vacated by the U.S. Supreme Court for the proposition that Defendants' proposed medical release authorization form was overbroad under the ADA.[142] Defendants argue that the Port's e-mails make clear that the authorization was to be used for Dr. Costales.[143] Defendants allege that Plaintiff has not claimed that Dr. Costales had any records other than those relating to Plaintiff's alleged PTSD and mental health, or that the request to Dr. Costales would have garnered unrelated information.[144]

Furthermore, Defendants aver, Plaintiff's deposition testimony proves that Mays was convinced that the letter requesting a "reasonable accommodation" was sufficient to obtain ADA accommodations, and that the Port therefore was not entitled to view her medical records.[145] According to Defendants, however, that view is not supported by law, and the Port was entitled to gather medical information to determine the appropriate accommodation.[146] Defendants argue that

---

[140] *Id.*

[141] *Id.*

[142] *Id.* (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 n.6 (9th Cir. 2000), *vacated by* 535 U.S. 391 (2002)).

[143] *Id.* at p. 3.

[144] *Id.*

[145] *Id.*

[146] *Id.* (citing *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009); *Williams v. Prison Health Servs., Inc.*, 159 F. Supp. 2d 1301, 1310–11 (D. Kan. 2001); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011)).

Plaintiff was represented by counsel during the ADA accommodation process and e-mails that she supplied to the EEOC demonstrate that she purposefully elected to not respond to the Port and that she did not authorize Dr. Costales to release the records, as her own counsel had suggested to her.[147] Defendants contend that Mays responded that she did not agree that she should authorize the Port to view her medical records, alleged that others were not required to submit such documentation, and asserted a "right to privacy."[148] Defendants allege that Plaintiff repeatedly failed to respond to any of the Port's three attempts to obtain medical information, and that this led to the breakdown of the interactive process mandated by the ADA, thereby destroying her ADA claim.[149]

### 3.      Title VII/State Law Discrimination

Defendants argue that Plaintiff, in her opposition, stated only generically that "[t]he above presented documented actions of defendants also constitute violations of Title VII and State law" or at least raise genuine issues of material fact.[150] Defendants contend that they provided a detailed legal analysis and cited pertinent authority as to why Plaintiff could not sustain allegations of hostile work environment or actionable discrimination, and note that Plaintiff did not cite a single case or authority in support of her Title VII or state law claims.[151] Therefore, Defendants assert, summary judgment is warranted in the Port's favor.[152]

---

[147] *Id.* at p. 4.

[148] *Id.* at p. 5.

[149] *Id.*

[150] *Id.* at pp. 5–6.

[151] *Id.* at p. 6.

[152] *Id.*

### 4.    Retaliation

Finally, Defendants argue that Plaintiff points to no evidence or testimony showing that Bylsma's allegedly retaliatory acts—namely the allegations that he once became "physically aggressive" with Mays, that he refused to designate her leave as leave without pay, that he micro-managed her, and that he was otherwise a "bully"—were in fact retaliatory.[153] Defendants argue that Bylsma testified that he did not object to Mays taking leave, and only took issue with the type of leave that she requested, specifically her request to take leave without pay to attend her son's graduation.[154] According to Defendants, Bylsma told Mays that she had to use her accrued annual leave, which is paid leave.[155] Thus, Defendants argue, Plaintiff is alleging that she was retaliated against because the Port compensated her for leave time instead of designating the time off as unpaid leave.[156] Defendants assert that Mays has cited to no legal authority for the proposition that paid leave is an "adverse employment action."[157] Defendants also note that Bylsma testified that his "micro-managing" could be explained by the fact that, when Mays ran out of things to do, she would occupy herself with non-work related things, and therefore he felt he needed to keep an eye on her to keep her busy with tasks.[158]

Defendants contend that even assuming Plaintiff could make out a prima facie retaliation claim, it would nevertheless fail because she has not offered any summary judgment evidence to

---

[153] *Id.*

[154] *Id.*

[155] *Id.* at p. 7.

[156] *Id.*

[157] *Id.*

[158] *Id.*

rebut the Port's legitimate, non-retaliatory reasons for its actions.[159]

**D.      Plaintiff's Sur-Reply in Opposition to Summary Judgment**

In further opposition, Plaintiff first contends that she had insufficient time to prepare a proper sur-reply.[160] These arguments were also contained in Plaintiff's "Motion to Strike Reply Memorandum,"[161] and the Court has addressed them in a prior Order.[162]

Next, Plaintiff contends that in support of their reply memorandum, Defendants attached an affidavit of Gwendolyn Hagar asserting that Defendants only asked for medical records from Dr. Costales.[163] However, Mays contends, the general release sent by Defendants clearly shows that they repeatedly insisted that Mays sign a blank general release for all her medical records.[164] Plaintiff contends that "[i]t is well settled that no particular language or formality is required to engage in the interactive process" and that deposition testimony of Mays and Bylsma, as well as e-mails exchanged between Mays and Bylsma after Villarreal's demand for a general release, show that Mays did in fact participate in the process.[165] Furthermore, Mays alleges that the requests for accommodation submitted by Dr. Costales contained sufficient information for Defendants to make an accommodation.[166] According to Plaintiff, "it is well settled that an employer can take actions that

---

[159] *Id.* at p. 8 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

[160] Rec. Doc. 99 at p. 1.

[161] Rec. Doc. 80.

[162] Rec. Doc. 97.

[163] Rec. Doc. 99 at p. 2.

[164] *Id.*

[165] *Id.*

[166] *Id.*

make it futile for an employee to participate in further interactive process," and Villarreal's e-mails made it clear that Defendants would not grant the requested accommodation unless Mays signed the prohibited general release.[167]

Finally, Plaintiff reiterates that Defendants' submission of a ten-page reply memorandum, the maximum allowed, with nine exhibits attached, clearly establishes the existence of genuine issues of material fact precluding summary judgment.[168]

### III. Law and Analysis

**A.**    ***Legal Standard on a Motion for Summary Judgment***

Under Federal Rule of Civil Procedure 56(a), when the pleadings and evidence demonstrate that no genuine dispute exists as to any material fact, the moving party is entitled to judgment as a matter of law, and summary judgment should be granted.[169] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[170] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[171] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment

---

[167] *Id.*

[168] *Id.* at p. 3.

[169] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[170] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[171] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985);  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

as a matter of law.[172]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[173] Where the non-moving party bears the burden of proof at trial, as here, the party moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[174] Thus, if the moving party satisfies its initial burden, the burden shifts to the nonmoving to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[175]

In doing so, the non-moving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[176] Likewise, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment proof.[177] Federal Rule of Civil Procedure 56 does not impose on the Court a duty to "sift through the record in search of evidence" to support the nonmovant's opposition;[178] the burden to identify such evidence remains wholly on the nonmovant.[179] Hearsay evidence and unsworn documents that

---

[172] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[173] *Celotex*, 477 U.S. at 323.

[174] *Id.* at 325.

[175] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[176] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[177] *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

[178] *Ragas*, 136 F.3d at 458; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992).

[179] *Skotak*, 953 F.2d at 916 n.7.

cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[180]

There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[181] The court need not consider disputed fact issues which are "irrelevant and unnecessary."[182] If the nonmovant fails to make a showing sufficient to establish the existence of a factual dispute regarding an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.[183]

### 1.   Legal Standard on an FMLA Claim

The FMLA prohibits employers from "interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act" and retaliating against employees who exercise FMLA rights.[184] To establish a prima facie FMLA interference case, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant was an employer subject to the FMLA's requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA.[185]

"In the case of foreseeable absences, FMLA requires employees to provide an employer with at least thirty days of advance notice."[186] For unforeseeable absences, however, employees should

---

[180]  *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).

[181]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

[182]  *Id.*

[183]  *Celotex*, 477 U.S. at 322–23.

[184]  29 C.F.R. § 825.220.

[185]  *See Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

[186]  *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007) (citing 29 C.F.R. § 825.302).

provide an employer with notice "as soon as practicable under the facts and circumstances of the particular case."[187] "Although an employee need not use the phrase 'FMLA leave,' she must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA."[188] The Fifth Circuit has declined to announce any categorical "rules" for the content of notice by an employee; instead, courts are to look at "[w]hat is practicable, both in terms of the timing of the notice and its content, . . . depend[ing] upon the facts and circumstances of each individual case."[189] "An employer may have a duty to inquire further if statements made by the employee warrant it, but 'the employer is not required to be clairvoyant.'"[190]

Furthermore, employees bear the burden of proving a real impairment of their FMLA rights and resulting prejudice.[191] Moreover, "FMLA's remedial scheme requires an employee to prove prejudice as a result of the employer's lapse; the employee may not expand the statute's coverage as a penalty for an employer's technical compliance shortcoming."[192] Even where a reasonable jury could find that an employer interfered, restrained or denied the exercise of FMLA rights, an employee must still point to evidence that she lost compensation or benefits by reason of the violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status such that equitable relief is appropriate.[193]

---

[187] 29 C.F.R. § 825.303(a); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998).

[188] *Id.* (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762–64 (5th Cir. 1995); 29 C.F.R. § 825.303(b)).

[189] *Manuel*, 66 F.3d at 764.

[190] *Lanier,* 527 F. App'x at 316 (quoting *Satterfield*, 135 F.3d at 980).

[191] *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668 (E.D. La. 2014) (Morgan, J.) (citing *Lubke v. City of Arlington*, 455 F.3d 489, 497 (5th Cir. 2006)).

[192] *Lubke*, 455 F.3d at 497.

[193] *Jones*, 58 F. Supp. 3d at 668–69 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002); 29 U.S.C. § 2617(a)(1)).

2.     **Analysis**

i.     ***FMLA Claim Against Bylsma***

Defendants first contend that Bylsma cannot be held liable under the FMLA because Mays has testified that FMLA determinations were handled by Heather Horan in Human Resources.[194] Mays, however, responds that Bylsma, as Mays' supervisor, had the authority to classify her leave days and should have properly classified the time off as FMLA time.[195] Mays relies on deposition testimony in which Bylsma described changing Mays' leave from "without pay" to "sick leave" after Mays presented him with a doctor's note, and otherwise described determining how to label leave taken by Plaintiff.[196]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[197] Here, Defendants briefly assert that Mays has testified that someone else was responsible for FMLA determinations, and therefore Bylsma must be dismissed from the suit.[198] Even assuming Mays' testimony satisfies Defendants' initial burden to identify the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to "identify specific evidence in the record" that supports her claims.[199] Here, Plaintiff does so by pointing to deposition testimony by Bylsma in which he articulated having control over the labeling of leave taken by Mays.[200] Thus,

---

[194] Rec. Doc. 64-2 at p. 8 (citing Rec. Doc. 64-3 at p. 69).

[195] Rec. Doc. 69 at p.4.

[196] *Id.* (citing Rec. Doc. 69-3 at pp. 6–13).

[197] *Celotex,* 477 U.S. at 323.

[198] Rec. Doc. 64-2 at p. 8.

[199] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[200] Rec. Doc. 69 at p. 4.

although Defendants argue in their reply that "Plaintiff has not contested . . . that the remaining FMLA claim against Bylsma should be dismissed,"[201] the Court disagrees and finds that Plaintiff has indeed raised a genuine, disputed issue of material fact concerning who had responsibility for FMLA leave. The Fifth Circuit has held that where evidence conflicts regarding responsibility for designating FMLA claims, summary judgment is precluded.[202] Thus, the Court must analyze Plaintiff's FMLA claim against both the Port and Bylsma.

### ii.    *FMLA Claim Against Port and Bylsma*

To establish a prima facie FMLA interference case, Plaintiff must show that: (1) she was an eligible employee; (2) Defendants were employers subject to the FMLA's requirements; (3) she was entitled to the leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) Defendants denied her the benefits to which she was entitled under the FMLA.[203] Defendants claim that Plaintiff cannot meet the fourth or fifth prongs of the claim.[204]

### a.    Notice

In her complaint, Plaintiff alleges that after a visit on December 4, 2013, her doctor, Dr. Costales, issued a notice that Mays was not to released to return to work until after a follow-up visit scheduled for December 11, 2013.[205] According to Plaintiff, Dr. Costales did not release Mays to return to work until December 23, 2013.[206] Plaintiff alleges that the Port violated the FMLA,

---

[201] Rec. Doc. 98 at p. 1.

[202] *Towns v. Ne. Miss. Elec. Power Ass'n*, 478 F. App'x 244, 247 (5th Cir. 2012).

[203] *See Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

[204] Rec. Doc. 64 at p. 9.

[205] Rec. Doc. 1 at p. 5.

[206] *Id.*

however, by failing to designate the leave prescribed by Dr. Costales as FMLA leave.[207]

Defendants claim that on December 13, 2013, the Port issued a pre-deprivation notice advising Mays that her removal from employment had been recommended under Civil Service Rule 12.6(a)(1), governing "non-disciplinary" removals, and that she was given ten days to furnish a written response.[208] Defendants claim that on December 18, 2013, Mays responded to the notice and asserted for the first time that she was exercising her FMLA rights, after which the pre-deprivation notice was rescinded.[209] Therefore, Defendants argue, at the time the pre-deprivation notice was issued, Mays had not provided notice of her intent to take FMLA leave, but that once she did exercise her rights, the Port granted her FMLA request.[210] Plaintiff responds that Defendants were informed on December 4, 2013 by Dr. Costales that Mays was undergoing treatment and would not be able to return to work until she was released.[211] Because Mays' supervisor was on notice that her doctor had excused her from work, Plaintiff contends, her time off should have been properly classified as FMLA time.[212]

An employee seeking to take FMLA leave must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA, though she need not actually use the phrase "FMLA leave."[213] Indeed, 29 C.F.R. § 825.303(b) provides that "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may

---

[207] *Id.*

[208] Rec. Doc. 64-2 at p. 9 (citing Rec. Doc. 64-6 at pp. 18–19).

[209] *Id.* (citing Rec. Doc. 64-6 at p. 21).

[210] *Id.*

[211] Rec. Doc. 69 at p. 4 (citing Rec. Doc. 69-5).

[212] *Id.*

[213] *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762–64 (5th Cir. 1995); 29 C.F.R. § 825.303(b).

only state that leave is needed." The Fifth Circuit has found sufficient notice where an employee's mother contacted the employee's supervisor and informed her that the employee was suffering from a severe medical condition and would not be able to work.[214] There, the employee's mother did not provide an anticipated duration because she did not know how long her daughter would be incapacitated.[215] The Fifth Circuit found, however, that the mother's phone calls sufficiently described the employee's symptoms and treatment to apprise the employer that the requested time off might be covered by the FMLA.[216] On the other hand, the Fifth Circuit has found insufficient notice in a case where an employee informed his supervisor that he might be suffering from bipolar depression and needed time to see a doctor, but never scheduled a doctor's visit and never requested leave for a certain day or period.[217] The Fifth Circuit has also held notice insufficient where an employee's mother told a store manager that the employee was "sick" and delivered a note from the employee describing "a lot of pain in her side" and the need to take the day off from work.[218]

"The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."[219] Here, Plaintiff has attached as an exhibit a note by Dr. Costales, written on December 4, 2013, stating that the Mays was seen that day and that she "is not released to return to work at this time."[220] Defendants do not contest that they received Dr. Costales' note or otherwise contend that they were

---

[214] *Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576, 584 (5th Cir. 2010).

[215] *Id.* at 583.

[216] *Id.* at 584.

[217] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999).

[218] *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998)

[219] *Id.* at 977.

[220] Rec. Doc. 69-5.

unaware of Plaintiff's intention to take medical leave, even if Mays perhaps did not actually invoke the FMLA until she responded to Hager's e-mail on December 18, 2013. A rational trier of fact could find that a note from Mays' doctor that she would be unable to return to work until an indefinite future date could have reasonably placed Defendants on notice of Plaintiff's intention to take FMLA leave. Therefore, at the very least, Plaintiff has met her burden of establishing a genuine issue of material fact concerning the notice prong of an FMLA claim.

### b.   Denial of Benefits

However, to prevail on an FMLA claim, Plaintiff must also show that Defendants denied her the benefits to which she was entitled under the FMLA.[221] Specifically, Plaintiff must show that she lost compensation or benefits  as a result of the FMLA violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status such that equitable relief is appropriate.[222] Here, Plaintiff contends that having her badge deactivated, her name taken off her office door and her belongings packed deprived her of "work benefits."[223] Defendants contend that Plaintiff has admitted that the Port ultimately classified her leave time as FMLA leave and rescinded the pre-deprivation notice.[224] Moreover, Defendants produced evidence that the Port applied Mays' remaining FMLA leave to her absences while she was under the care of Dr. Costales.[225] Thus, Defendants argue, Plaintiff was not deprived of her FMLA benefits.[226]

---

[221] *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

[222] *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668–69 (E.D. La. 2014) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002); 29 U.S.C. § 2617(a)(1)).

[223] Rec. Doc. 69 at p. 5.

[224] Rec. Doc. 98 at p. 2.

[225] Rec. Doc. 64-2 at p. 9 (citing Rec. Docs. 64-6 at pp. 27–29; 64-3 at pp. 70–72).

[226] Rec. Doc. 98 at p. 2.

Neither party cites any authority defining "benefits" that may be lost due to a violation of the FMLA. Plaintiff, however, appears to misread the fifth prong of the interference test. The prong requires that an employee prove that she was denied benefits to which she was entitled *under the FMLA*, not that she lost her usual employment benefits as a result of taking FMLA leave.[227] The latter allegation is more properly classified as a claim of disparate treatment or retaliation, discussed *infra*, because maintaining an active badge, for example, is not a "benefit" provided by the FMLA.[228] Instead, the FMLA guarantees benefits such as a total of 12 workweeks of leave during any 12-month period due to an employee's serious health condition.[229]

Defendants have come forward with summary judgment evidence that, after Mays informed the Port that she was invoking her FMLA leave, the leave was granted retroactively.[230] It is undisputed that, on January 16, 2014, the Port rescinded the pre-deprivation notice.[231] Similarly, it is undisputed that although Mays filed a Civil Service appeal regarding the December 13, 2013 pre-deprivation notice, the Civil Service Commission dismissed her appeal as premature because she had not been removed from her position.[232] Therefore, even if the Port unnecessarily delayed in classifying Mays' leave as pursuant to the FMLA, Plaintiff has not come forward with any summary judgment evidence that she was ultimately deprived of benefits under the FMLA. The FMLA requires employees to prove prejudice as a result of an employer's lapse; "the employee may not

---

[227] *See Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

[228] The FMLA prohibits "employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the act." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

[229] 29 U.S.C, § 2612.

[230] Rec. Doc. 64-2 at p. 9.

[231] *Id.* at p. 4

[232] *Id.* at p. 5.

expand the statute's coverage as a penalty for an employer's technical compliance shortcoming."[233] Even if a reasonable jury could find that Defendants at first unreasonably denied Mays her FMLA leave rights, Mays must still point to evidence that she lost compensation or benefits by reason of the violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status such that equitable relief is appropriate.[234]

The Court finds that Defendants have adequately asserted that there are no genuine, disputed issues of material fact as to the fifth prong of an FMLA claim, specifically regarding the "benefits" that Plaintiff was allegedly denied. Accordingly, the Court finds that Defendants have not violated the FMLA by not properly classifying Mays' leave as FMLA time until after Plaintiff expressly invoked her FMLA rights on December 18, 2013. Therefore, the Court hereby grants summary judgment in favor of Defendants on Plaintiff's FMLA claim.

Because the only claim remaining against Bylsma in this litigation was the FMLA claim, he is hereby dismissed with prejudice from the suit, and the Court from here on analyzes only Plaintiff's claims against the Port, the only remaining defendant ("Defendant").

## B.   McDonnell Douglas *Burden-Shifting Framework*

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under the ADA and Title VII,[235] as well as allegations of retaliation.[236] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must

---

[233] *Lubke v. City of Arlington*, 455 F.3d 489, 497 (5th Cir. 2006).

[234] *Jones*, 58 F. Supp. 3d at 668–69 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002); 29 U.S.C. § 2617(a)(1)).

[235] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[236] *See Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999)*, partially abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–49 (2000).

first establish a prima facie case of discrimination or retaliation.[237] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[238] If the plaintiff can establish a prima facie case, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory purpose for an adverse employment action.[239] The defendant must point to admissible evidence in the record,[240] but the burden is one of production, not persuasion.[241] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[242] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[243]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[244] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[245]

### 1.     Legal Standard on ADA Violation Claims

To establish a claim for disability discrimination under the ADA, a plaintiff may "proceed

---

[237] *McDonnell Douglas*, 411 U.S. at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[238] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

[239] *Id.*

[240] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[241] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[242] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[243] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[244] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[245] *Id.*

under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*."[246] To prevail on a prima facie claim of an ADA violation, a plaintiff must first establish that: (1) she has a disability; (2) she is qualified for the position; and (3) she was discriminated against because of her disability.[247] Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[248] "Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability."[249]

When a qualified individual with a disability requests a reasonable accommodation, employers and employees should "engage in flexible, interactive discussions to determine the appropriate accommodation."[250] If an employer is unwilling to engage in a good faith interactive process, and that unwillingness leads to a failure to reasonably accommodate an employee, the employer violates the ADA.[251] However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer."[252]

### 2.     Analysis

The Port challenges only the third prong of an ADA discrimination claim, arguing that Mays

---

[246] *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 695 (5th Cir. 2014) (citing 411 U.S. 792 (1973)).

[247] *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011).

[248] 42 U.S.C. § 12112(b)(5)(A).

[249] *Griffin,* 661 F.3d at 224.

[250] *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing 29 C.F.R. pt. 1630, App'x § 1603.9).

[251] *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

[252] *Griffin*, 661 F.3d at 224.

cannot prove that she was discriminated against because of her disability.[253] The Port contends that Mays' first disability accommodation was granted and, regarding her second disability accommodation, she intentionally failed to engage in the interactive process to determine the appropriate ADA accommodation.[254]

### i.     First ADA Accommodation Request

It is undisputed that on December 4, 2013, Dr. Costales submitted a request to the Port seeking a reasonable accommodation for Mays that would allow her to work from home, remove her harasser from the workplace, or allow her to work from a space where the "identified male causing her distress is not."[255] Similarly, it is undisputed that two days later, on December 6, 2013, the Port suspended Rodriguez, who never returned to work at the Port.[256] Similarly, it is undisputed that Plaintiff was informed of Rodriguez's suspension on both December 8 and 11, 2013.[257] Thus, the Port alleges that Mays received the requested accommodation and therefore has no viable claim that the Port failed to accommodate her.[258]

In opposition, Plaintiff does not appear to address Defendant's arguments concerning Mays' first request for accommodations under the ADA. Instead, Plaintiff appears to focus on Dr. Costales' second request for accommodation on April 8, 2014. On a motion for summary judgment, where the non-moving party bears the burden of proof at trial, as here, the party moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-

---

[253] Rec. Doc. 64-2 at p. 10.

[254] Rec. Doc. 64-2 at p. 10.

[255] Rec. Doc. 64-1 at pp. 3–4.

[256] *Id.* at p. 4.

[257] *Id.*

[258] Rec. Doc. 64-2 at p. 11.

moving party's case.[259] Here, Defendant has pointed to uncontroverted evidence suggesting that Plaintiff's first request for ADA accommodation was granted. If the moving party satisfies its initial burden, the burden shifts to the nonmoving to "identify specific evidence in the record, and articulate" precisely how that evidence supports her claims.[260] Plaintiff has not done so here, nor does she appear to even challenge the Port's assertions regarding her first request for accommodation. Therefore, the Court finds that summary judgment in favor of Defendant is warranted on Plaintiff's claim that the Port "failed to provide the reasonable accommodation prescribed by Dr. Costales"[261] on December 4, 2013.

### ii.    Second ADA Accommodation Request

It is uncontested that on April 8, 2014, Dr. Costales requested that Plaintiff be given the accommodation of moving back into her personal office or another private space.[262] Plaintiff also does not contest that two days later, on April 10, 2014 Villarreal, the Port Claims Manager/Safety Officer, contacted Mays and requested medical documentation in support of her claim.[263] Similarly, it is undisputed that Villarreal followed up twice more on April 21, 2014 and May 8, 2014, wherein she requested that Plaintiff complete a medical authorization form so that the Port could access her medical records and evaluate her request.[264]

The parties dispute whether the Port's requests for medical documentation, and Plaintiff's

---

[259]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[260] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[261] Rec. Doc. 1 at p. 5.

[262] Rec. Doc. 64-1 at p. 5.

[263] *Id.* at p. 6.

[264] *Id.*

responses or lack thereof, amounted to a good faith, interactive process to determine the appropriate accommodation under the ADA, or whether either party's alleged unwillingness to engage in the process led to a failure to reasonably accommodate under the ADA. When a qualified individual with a disability requests a reasonable accommodation, employers and employees should "engage in flexible, interactive discussions to determine the appropriate accommodation."[265] Defendant avers that Plaintiff's refusal to provide requested medical documents despite three requests by Defendant amounts to a failure to engage in the interactive process mandated by the ADA and destroys her ADA claim.[266] Plaintiff responds that the "General Release Authorization" requested by Defendant clearly violated the ADA, as it was not directed to a particular health care provider and authorized the release of "all records pertaining to . . . any physical or emotional condition . . . ."[267] Plaintiff has pointed to no relevant Fifth Circuit law, however, explicitly addressing the question of whether a release form of the sort provided by Defendant would violate the ADA.

Defendant alleges that the Port was entitled, as a matter of law, to gather medical information to determine the appropriate accommodation, and that Plaintiff's failure to provide the information precludes her ADA claim.[268] Defendant avers that in *Templeton v. Neodata Services, Inc.*, a Tenth Circuit case cited by the Fifth Circuit,[269] the employer twice requested that the plaintiff provide medical certification to support her request for leave.[270] According to Defendants, the plaintiff in

---

[265] *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing 29 C.F.R. pt. 1630, App'x § 1603.9).

[266] Rec. Doc. 98 at p. 5.

[267] Rec. Doc. 69 at p. 3 (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1122 n.6 (9th Cir. 2000) (en banc)).

[268] *Id.* (citing *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009); *Williams v. Prison Health Servs., Inc.*, 159 F. Supp. 2d 1301, 1310–11 (D. Kan. 2001); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011)).

[269] *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

[270] Rec. Doc. 64-1 at p. 13 (citing *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617 (10th Cir. 1998)).

*Templeton* failed to do so, was terminated, and later filed suit under the ADA.[271] There, Defendants contend, the appellate court affirmed summary judgment in the employer's favor, noting that the employee's failure to provide medical information necessary to the interactive process precluded her from claiming that the employer violated the ADA by failing to provide reasonable accommodations.[272] Here, Defendant argues, Plaintiff intentionally and repeatedly failed to authorize the Port to communicate with her medical provider and obtain medical documentation, and thus, her ADA claim must fail on its face.[273] Defendant also cites two other cases, *Williams v. Prison Health Services, Inc.* and *Griffin v. United Parcel Service, Inc.*, wherein the Port claims that plaintiffs impeded the interactive process by failing to furnish requested ADA information and the courts ruled in favor of the employers.[274]

The Court is not persuaded by *Templeton*, *Williams*, and *Griffin*, only the latter of which is a case from the Fifth Circuit. In *Templeton*, the court did indeed hold that a plaintiff's failure to provide medical information precluded her from claiming that the employer violated the ADA, but the court based its decision on the fact that the plaintiff's treating physician had sent a letter "indicating real doubt" as to whether the plaintiff would be able to return to work, and the court found that it was clear under the undisputed facts that the employer needed the requested information in order to determine the appropriate accommodation.[275]

In *Williams*, a district court case from Kansas, the facts are more similar to the ones in the

---

[271] *Id.* (citing *Templeton*, 162 F.3d at 618–19).

[272] *Id.* (citing *Templeton*, 162 F.3d at 618–19).

[273] *Id.*

[274] Rec. Doc. 98 at p. 4 (citing *Williams*, 159 F. Supp. 2d at 1310–11; *Griffin*, 661 F.3d at 225).

[275] *Templeton*, 162 F.3d at 619.

instant case. There, the court held that a plaintiff impeded the interactive process when she refused to allow her doctor to release information to her employer that was requested in order to determine the duration of the plaintiff's work restrictions.[276] *Williams* is not binding on this Court. However, to the extent that its reasoning may be persuasive, the Court notes that the court in *Williams* took as a fact that the employer "needed complete medical certification to assess the appropriate accommodations."[277] Finally, in *Griffin*, the Fifth Circuit affirmed summary judgment in favor of an employer where a plaintiff did not furnish requested ADA information, but as Defendant notes in its brief, the plaintiff in that case retired rather than continue the interactive process.[278]

However, contrary to the facts in *Templeton* and perhaps *Williams*, Plaintiff contends that the requests for accommodation submitted by Dr. Costales contained sufficient information for Defendants to make an accommodation.[279] The Fifth Circuit has held that the ADA's direction to the parties to engage in an interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations."[280] "Indeed, as the interpretive guidelines and courts have recognized, there may be some situations in which the reasonable accommodation is so obvious that a solution may be developed without either party consciously participating in an interactive process."[281]

The Court need not decide whether, as a matter of law, Defendant's request for a general

---

[276] *Williams*, 159 F. Supp. 2d at 1310–11.

[277] *Id.* at 1310.

[278] *Griffin*, F.3d at 225 (5th Cir. 2011) ("Where an employee terminates the interactive process by voluntarily retiring, it is difficult to discern what measures may have been taken had accommodation discussions continued.").

[279] *Id.*

[280] *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

[281] *Id.* (citing 29 C.F.R. pt. 1630 app. § 1630.9 at 360 (1998); *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 514 (1st Cir. 1996)).

release authorization was too broad under the ADA, or even whether Plaintiff's failure to come forward and request a narrower authorization, or to respond to the three e-mail requests she received from Villarreal, necessarily amounted to a failure to engage in the interactive process dictated by the ADA. Here, Plaintiff has raised a genuine issue of disputed material fact concerning whether the information provided by Dr. Costales was sufficient to inform Defendant of the accommodations warranted by Plaintiff's condition. If the information Dr. Costales provided was indeed sufficient, then it is possible that even if Plaintiff caused a failure of the interactive process as a matter of law, Defendant could nevertheless be liable for "fail[ure] to accommodate the known limitations of an employee's disability."[282] This disputed fact precludes summary judgment, and the Court accordingly denies summary judgment on Plaintiff's ADA claim.

### 3.      Title VII/State Law Discrimination

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color . . . [or] sex . . . "[283] A plaintiff may establish a violation of Title VII by proving that discrimination has created a hostile or abusive working environment,[284] or by proving disparate treatment on the basis of race or sex.[285]

Plaintiff also asserts violations of the Louisiana Employment Discrimination Law ("LEDL").[286] LEDL claims are analyzed with reference to the law governing federal Title VII

---

[282] *Griffin,* 661 F.3d at 224.

[283]  42 U.S.C. § 2000e–2(a)(1).

[284] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

[285] *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)

[286] La. Rev. Stat. 23:301 *et seq.*

claims.[287] Since the Louisiana Supreme Court has addressed state-law discrimination claims in light of federal Title VII case law, and since the Court is not aware of any statutory or Louisiana Supreme Court authority suggesting that the Louisiana Supreme Court would follow a different approach in this case, this Court's Title VII analysis, below, applies to Mays' employment discrimination claims under the LEDL as well.

### i.   *Hostile Work Environment*

### a.   **Legal Standard**

To establish a prima facie claim of hostile work environment, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[288] In determining whether a hostile work environment exists, courts use a totality-of-the circumstances test that focuses on the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance.[289] "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'"[290] A recurring point in the Supreme Court's hostile work

---

[287] *King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99); 743 So. 2d 181, 187 ("Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws."); *see also Mbarika v. Bd. of Sup'rs of La. State Univ.*, 2007-1136 (La. App. 1 Cir. 6/6/08); 992 So. 2d 551, 561 ("Because the Louisiana and federal anti-discrimination statutes are similar in scope, courts often consider federal jurisprudence when construing state law.").

[288] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[289] *Baker v. Fedex Ground Package Sys. Inc.*, 278 F. App'x. 322, 328 (5th Cir. 2008).

[290] *Meritor,* 477 U.S. at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).

environment cases is that "'simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[291] The Supreme Court has held that courts should filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing," and has held that "conduct must be extreme to amount to a change in the terms and conditions of employment . . . ."[292]

### b.       Analysis

Plaintiff points to a series of actions that she alleges created a hostile work environment, namely: (1) on July 2011, Rodriguez made an inappropriate sexually oriented remark to Mays, implicitly suggesting that he could "help" her in the bathroom; (2) despite her complaints, the Port responded only by counseling Rodriguez and requesting that he apologize to Mays; (3) on November 23, 2013, Rodriguez sent an e-mail to her and other co-workers titled "Penis Surgery" in the subject line; (4) the Port failed to take immediate and appropriate corrective action to remove Rodriguez, and did so only because Rodriguez is Caucasian and Mays is African-American.[293] Plaintiff has also alleged in deposition testimony and elsewhere that: (1) in 2011, on a tour of the office, she saw nude or bikini-clad pictures in Rodriguez's office; (2) while she was on FMLA leave, her name plate was removed from her door; (3) during the same leave, her items were packed up; (4) she was placed in a shared office space; (5) she was given tasks solely to harass her, and (6) she was once involved in an incident with Bylsma in which he "snatched" papers from her hand.[294]

---

[291] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

[292] *Id.* (quoting B. Lindemann & D. Kadue, *Sexual Harassment in Employment Law* 175 (1992)).

[293] Rec. Doc. 1.

[294] Rec. Doc. 64-3 at p. 83.

Defendant contends that Plaintiff's allegations are "not sufficiently severe or pervasive to amount to an actionable hostile work environment."[295] Plaintiff does not directly address the Port's contentions regarding hostile work environment. In her opposition, Plaintiff states only that the "above recited facts establish, at the least, genuine issues of material fact regarding Ms. Mays Title VII and State law claims."[296] Those facts include Plaintiff's claims involving alleged violations of the ADA, the FMLA, and their respective anti-retaliation provisions.[297] In her "Statement of Contested Material Facts," attached to her opposition pursuant to Local Rule 56.2, Plaintiff contests few facts relevant to her hostile work environment claims—only whether Rodriguez's "Penis Surgery" e-mail was in fact sent to males and females and other former and current Port employees.[298]

On a motion for summary judgment, where a moving party satisfies its initial burden to identify those portions of the record that it believes demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims."[299] Plaintiff does not identify such evidence here. With regard to the "Penis Surgery" e-mail, Defendant points to Mays' deposition testimony in which she recites a list of names that appeared at the top of the e-mail sent by Rodriguez, signaling who else, other than Plaintiff, had received the e-mail.[300] Defendant also points

---

[295] Rec. Doc. 64-2 at p. 15.

[296] Rec. Doc. 69 at pp. 5–6.

[297] *See id.* at pp. 2–5.

[298] Rec. Doc. 69-1.

[299] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[300] Rec. Doc. 64-1 at p. 3 (citing Rec. Doc. 64-3 at p. 20).

to a forwarded copy of the e-mail itself, which lists more than a dozen names as recipients of the e-mail.[301] Plaintiff does not cite to anything in the record to dispute these facts; however, a cursory examination shows that Defendant correctly asserts that both males and females received the e-mail, and Mays in her deposition states that at least one of the names is of a former employee. The material facts, therefore, do not appear to be in dispute. Whether the uncontroverted facts created a hostile work environment is therefore a question of law that the Court may address on a motion for summary judgment.[302]

According to the Port, other courts in this Circuit have granted summary judgment in favor of employers where plaintiffs alleged numerous instances of conduct that "were far more egregious" than the claims in the instant case.[303] For example, Defendant avers, the Western District of Louisiana granted summary judgment in favor of an employer in a case where a black male employee was allegedly harassed by a senior white male employee who, among other things, allegedly stated that he would kill the plaintiff if he had a daughter and the plaintiff ever spoke to her, placed tacks on the plaintiff's chair, placed catfish bait in his desk, soaked the plaintiff's chair with water, and placed grease on the ear piece of plaintiff's telephone.[304] There, the Port claims, the court found that although the employee accused of harassment had acted "childish[ly] and offensive[ly]," his conduct was "not so severe or pervasive as to affect a term or condition of [plaintiff's] employment."[305]

---

[301] *Id.* (citing Rec. Doc. 64-6 at p. 1).

[302] *See Vallecillo v. U.S. Dep't of Hous. & Urban Dev.*, 155 F. App'x 764, 768 (5th Cir. 2005).

[303] Rec. Doc. 64-1 at p. 3 (citing *Hubbard v. La. Machinery Co., LLC*, No. 04-2095, 2006 WL 1004293, *1–4 (W.D. La. Apr. 17, 2006)).

[304] *Id.* (citing *Hubbard*, 2006 WL 1004293, *1–4).

[305] *Id.* at p. 16 (citing *Hubbard*, 2006 WL 1004293 at *4).

48

Defendant also cites *Chelette v. State Farm Mutual Insurance Co.*, a Western District of Louisiana case in which the plaintiff alleged that she was harassed by a coworker who, among other things, allegedly brushed up against her an unknown number of times over five years, stood next to her and brushed his arm up against her breast perhaps more than 10 times, stared at her breasts, made comments about the proportions of her body and that he enjoyed watching her walk, asked her whether she ever thought about having an affair, leaned in as if to kiss her, and brought her a sheer swimsuit cover-up as a gift.[306] According to Defendant, the court in *Chelette* found that, under Fifth Circuit precedent, such allegations simply did not rise to the level required for recovery, and that the alleged behavior, if true, was "boorish and offensive," but not enough to create a hostile work environment.[307] The Port also cites a case in which Louisiana's Fourth Circuit Court of Appeal affirmed summary judgment for an employer where a plaintiff alleged she heard an assistant manager say he would never work under a black man and where the plaintiff attested to at least seven other comments made by a supervisor that the court agreed were "insensitive" and "reflect[ed] profound ignorance on the part of the speaker."[308]

Moreover, Defendant contends that the Fifth Circuit has affirmed the dismissal of hostile work environment claims in cases involving allegations of assault and actual physical contact.[309] Here, the Port contends, Plaintiff has not alleged that any physical touching occurred and has not

---

[306] *Id.* (citing *Chelette v. State Farm Mut. Auto. Ins. Co.*, No. 04-2440, 2006 WL 2513918, at *9 (W.D. La. Aug. 29, 2006)).

[307] *Id.*

[308] *Id.* at p. 17 (citing *Sears v. Home Depot, USA, Inc.*, 06-0201 (La. App. 4 Cir. 10/18/06); 943 So. 2d 1219, 1231–32).

[309] *Id.* at pp. 16–17 (citing *Shepherd v. Comptroller of Public Accounts of the State of Tex.*, 168 F.3d 871, 875 (5th Cir. 1999); *Derouen v. Carquest Auto Parts*, 275 F.3d 42 (5th Cir. 2001)).

linked any of the alleged harassment to her alleged disability.[310] Defendant avers that, with respect

to race, Plaintiff only alleged that Rodriguez said he liked ethnic women and thought she resembled

the performer Rihanna, but did not allege any racial slurs or racially derogatory comments.[311]

Similarly, with respect to sex, Defendant's position is that Plaintiff has only pointed to the alleged

pictures, a bathroom comment, and the e-mail by Rodriguez.[312]

      Plaintiff cites no case law whatsoever to support her claims and refers only to "genuine

issues of material fact" regarding her Title VII and LEDL claims.[313] Even reading each of the

allegedly "disputed" facts in favor of Plaintiff, however, the Court finds that the case law does not

weigh in her favor. Defendant relies on unpublished cases from the Western District of Louisiana

and Louisiana Fourth Circuit Court of Appeal  in which employees complained of significant

harassment, ranging from threats and the placement of tacks on an employee's chair,[314] to repeated

unwanted touching, staring at an employee's breasts, and various comments about an employee's

body.[315] In those cases, the courts nevertheless held that plaintiffs had failed to make prima facie

cases of sexual harassment.

      Cases decided by the Fifth Circuit, however, are in accord with Defendant's cited cases. For

example, in *Fortenberry v. Texas*, the Fifth Circuit upheld summary judgment in a case in which the

plaintiff pointed to two incidences, almost two years apart, where a co-worker used a racial slur

---

[310] *Id.* at p. 18.

[311] *Id.*

[312] *Id.*

[313] Rec. Doc. 69.

[314] *See Hubbard v. La. Mach. Co., LLC*, No. 04-2095, 2006 WL 1004293, at *4 (W.D. La. Apr. 17, 2006).

[315] *Chelette v. State Farm Mut. Auto. Ins. Co.*, No. 04-2440, 2006 WL 2513918, at *9 (W.D. La. Aug. 29, 2006).

while speaking to her, a supervisor made an allegedly offensive remark about a blonde wig worn by

a black client, and the husband of a co-worker allegedly stared at the employee in an intimidating

manner.[316] The Fifth Circuit reasoned that, although troubling, the incidents "did not affect a term,

condition or privilege of employment," and because they were isolated incidents "over a long period

of time[,] they were not sufficiently severe or pervasive to constitute an abusive or hostile work

environment."[317] Similarly, in assessing a "hostile work environment" claim under 42 U.S.C. § 1981,

the Fifth Circuit upheld a district court's grant of summary judgment in a case in which an employee

alleged that he endured race-based comments and was subjected to race-based flyers and unfair job

assignments.[318] There, the court reasoned that the complained-of conduct occurred sporadically over

a several-year period and was not pervasive, and that no single incident was severe enough to

independently support a hostile work environment claim.[319]

Similarly, Plaintiff here alleges only isolated incidents that were neither severe nor pervasive

enough to support a claim of hostile work environment. Title VII is not a "general civility code."[320]

Here, Plaintiff points to a handful of incidents over the course of two or three years in which a

coworker allegedly made an offensive comment about Plaintiff's use of a bathroom and then, two

years later, sent an e-mail titled "Penis Surgery" to more than a dozen coworkers and former

coworkers. Plaintiff also alleges that her name plate was removed and her items packed up while she

was on FMLA leave, but it is undisputed that her name plate was replaced upon her return. Mays

---

[316] *Fortenberry v. Texas*, 75 F. App'x 924, 928 (5th Cir. 2003).

[317] *Id.*

[318] *Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013).

[319] *Id.*

[320] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

also argues that Bylsma once "snatched" papers from her, but the Fifth Circuit has found even repeated unwanted attention, coupled with an instance of physical touching, not to meet the "severe or pervasive" standard.[321]

Accordingly, the Court finds that, as a matter of law, Plaintiff has not alleged sufficiently severe or pervasive conduct to sustain a hostile work environment claim. Because the Port has met its burden of proving that there are no genuine, disputed issues of material fact pertaining to Plaintiff's hostile work environment claims and Plaintiff has failed to establish evidence in the record raising disputed issues of material fact to support her claims, the Court grants summary judgment in favor of Defendant on Plaintiff's hostile work environment claim.

### ii. Disparate Treatment

#### a. Legal Standard

Mays' Title VII and LEDL claims are also based on allegations that she was subject to "disparate treatment" on the basis of her race and sex.[322] Courts analyze such discrimination claims under the *McDonnell Douglas* framework.[323] Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case by showing that she:

> (1) is a member of a protected group, (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.[324]

---

[321] *Wilkinson v. Potter*, 236 F. App'x 892, 893 (5th Cir. 2007) (finding that a plaintiff did not establish a hostile work environment where a coworker allegedly repeatedly stared at an employee, unnecessarily appeared in her work area, followed her around, touched her on her arm, and shook a rod in her direction for a few seconds).

[322] Rec. Doc. 1 at p. 8; Rec. Doc. 28 at p. 2.

[323] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802).

[324] *Id.* (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

Within the Fifth Circuit, not all negative workplace events constitute "adverse employment actions" cognizable under Title VII. Rather, "adverse employment actions" consist of "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating."[325] Denial of leave also constitutes an adverse employment action.[326]

### b.    Analysis

In its motion for summary judgment, the Port asserts that Plaintiff cannot meet the "adverse employment action" and less favorable treatment prongs of a prima facie discrimination case.[327] Defendant argues that the Fifth Circuit requires plaintiffs alleging an adverse employment action in a Title VII case to produce evidence of an "ultimate employment decision," which includes only actions such as "hiring, granting leave, discharging, promoting, or compensating."[328] According to the Port, the sole issue that could be actionable under Title VII or the LEDL is Plaintiff's requests for leave, and Mays has admitted that all of her requests were granted.[329] Therefore, because her remaining allegations do not involve "ultimate employment decisions," Defendant argues, her discrimination claims fail.[330] Moreover, Defendant contends, Plaintiff has not shown, and cannot show, that other Port employees were treated more favorably.[331] Plaintiff, in her opposition, does not directly rebut any of Defendant's arguments concerning disparate treatment or cite any case law, asserting only that "[t]he above presented documented actions of defendants also constitute

---

[325] *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

[326] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 522 (5th Cir. 2001).

[327] Rec. Doc. 64-2 at p. 18.

[328] *Id.* at p. 19 (citing *Smith v. Harvey*, 265 F. App'x 197, 202 (5th Cir. 2008)).

[329] *Id.*

[330] *Id.*

[331] *Id.* at n.23.

violations of Title VII and State law," referring to her allegations of retaliation and violations of the FMLA and ADA.[332]

Plaintiff's complaint does not specify the allegations that support her disparate treatment claim under Title VII or state law.[333] However, she makes several allegations that she has been discriminated against.[334] Specifically, Mays alleges that the Port: (1) failed to remove Rodriguez from her work space; (2) failed to take immediate corrective action against Rodriguez; (3) assigned her work assignments to harass her; (4) removed Mays from her private office and placed her in a shared office; (5) removed Mays' name plate from her door; (6) packed up Mays' personal items while she was on leave; (7) removed Mays' name from an organizational chart; and 8) issued unwarranted pre-deprivation notices.[335] In her first amended complaint, Plaintiff also accused Gwen Hager in the Human Resources Department of having "issues with racial preference," claiming that she had failed to introduce herself or shake Plaintiff's hand on prior occasions, and "was not warm and came across quite snobbish."[336] Plaintiff states that she did not receive "empathy, sympathy, [or] emotional support" from the two white females in her direct chain of command, and that they failed to "check on [her] emotional state."[337]

Only one of these allegations—the alleged denial of leave— may constitute an adverse

---

[332] Rec. Doc. 69 at p. 5.

[333] *See* Rec. Doc. 1.

[334] *Id.*

[335] *See* Rec. Doc. 1.

[336] Rec. Doc. 28-1 at p. 6.

[337] *Id.*

employment action.[338] As discussed *supra*, however, the Court finds that Defendants have come forward with summary judgment evidence, undisputed by Plaintiff, that after Mays informed the Port that she was invoking her FMLA leave, the leave was granted retroactively.[339] Because Plaintiff has not alleged a prima facie case, the Court finds that Plaintiff cannot maintain a cause of action under disparate treatment. Furthermore, Plaintiff has not alleged any facts or pointed to any evidence in the record suggesting that she suffered an adverse employment action on account of race or gender. Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's disparate treatment claim.

### 4.    Retaliation

#### i.    *Legal Standard*

The legal standards for Plaintiff's retaliation claims under Title VII, the ADA, and the FMLA are similar. To establish a prima facie case of retaliation under the traditional *McDonnell Douglas* framework, "the plaintiff must establish that: (1) [she] participated in an activity protected by Title VII[, the ADA, or the FMLA]; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[340]

---

[338] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 522 (5th Cir. 2001). Nor does the allegedly unwarranted pre-deprivation notice constitute an adverse employment action. A pre-deprivation notice provides employees an opportunity to respond *before* adverse employment actions are taken. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43 (1985). At the most, a pre-deprivation notice is a threat to later take an adverse employment action, and threats are not considered adverse employment actions in the Fifth Circuit. *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000). Moreover, the pre-deprivation notice complained of by Plaintiff was later rescinded. Rec. Doc. 64-1 at p. 4.

[339] *See* Rec. Docs. 64-6 at pp. 27–29; 64-3 at pp. 70–72.

[340] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citing *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)); *see also Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008) (citing *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir. 1999)) (applying the same test in an ADA context); *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (applying the same test in the FMLA context).

Unlike in the disparate treatment context, which defines adverse employment actions narrowly, the United States Supreme Court has defined adverse employment actions in the retaliation context as any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."[341] "[T]he significance of any given act of retaliation will often depend upon the particular circumstances."[342] However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."[343]

In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court held that under the causation prong of a prima facie retaliation analysis in "status-based discrimination" cases under Title VII, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."[344] This Court notes that the Fifth Circuit has not decided whether *Nassar* applies in FMLA retaliation cases, or whether it is instead governed by the traditional mixed-motive analysis.[345] "The mixed-motive framework applies to cases in which the employee concedes that discrimination was not the *sole* reason for her discharge, but argues that discrimination was *a* motivating factor in her termination."[346] Here, Plaintiff does not brief the issue of which standard to apply to her FMLA claim, but because the Court finds that Plaintiff's claims

---

[341] *McCoy*, 492 F.3d at 559.

[342] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)

[343] *Id.* at 68 (citing 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 669 (3d ed.1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)").

[344] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

[345] *See Harrelson v. Lufkin Indus., Inc.*, No. 14-41458, 2015 WL 3941905, at *3 n.3 (5th Cir. June 29, 2015) ("We have yet to decide whether *Nassar* applies to the FMLA context.").

[346] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

fail under either standard, it need not address the issue here.[347]

As noted above, if the Plaintiff meets her burden of making a prima facie case under *McDonnell Douglas*, the burden will shift to the defendant to articulate a legitimate, non-retaliatory purpose for an adverse employment action.[348] If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[349] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[350]

###### ii. *Analysis*

Defendant does not challenge the first two prongs of a prima facie retaliation claim, but argues that Plaintiff cannot show a causal connection between her protected activities and any adverse employment actions, including the pre-deprivation notice sent by the Port or its alleged failure to properly classify Plaintiff's leave as FMLA leave.[351] The Port claims that Mays admitted in her deposition that she did not have any information to challenge the Port's contention, supported by dated correspondence, that it made the determination to issue her pre-deprivation notice on December 12, 2013, the day before it received notice of the EEOC charge she had lodged on December 4, 2013.[352] According to Defendant, the pre-deprivation notice, which the Port ultimately issued on December 13, 2013, was also issued before Mays invoked FMLA leave on December 18,

---

[347] *See Castay v. Ochsner Clinic Found.*, 604 F. App'x 355, 356 (5th Cir. 2015) (declining to decide the issue because the case did not "turn on" the distinction).

[348] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

[349] *Id.*

[350] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[351] Rec. Doc. 64-2 at p. 21.

[352] *Id.* at pp. 21–22 (citing Rec. Docs. 64-6 at pp. 15, 20; 64-3 at pp. 50–51).

2013.[353] Similarly, Defendant avers, the decision to move Plaintiff to a shared office occurred before the Rodriguez e-mail, before the EEOC charge, and before Mays invoked FMLA leave on December 18, 2013.[354]

In response, Plaintiff repeats her allegations, stating that Mays was a good employee whose supervisor never had problems with her performance until after she questioned his handling of a discrimination complaint she had filed.[355] In support, she cites to deposition testimony in which Bylsma states that, in December of 2013, his relationship with her had become "difficult."[356] Plaintiff cites to evidence in the record in which Bylsma acknowledges that, as of January 2014, she had accused him of retaliating against her.[357] Plaintiff avers that she filed a claim that Bylsma had become physically aggressive with her, and cites to a note by her doctor, written on May 14, 2014, stating that Mays had told the doctor that Bylsma "displayed physically aggressive behavior."[358] Mays alleges that, "in retaliation," Bylsma refused to classify Mays' leave requests as leave without pay, citing eight pages of Bylsma's deposition testimony in which he describes occasions in which he stated that he disagreed with the classification of leave that Mays had requested.[359] In the deposition, however, Bylsma does *not* use the word "retaliation" or state a retaliatory motive for his actions.[360] Mays alleges that Bylsma began to "micro manage her and check up on her more than

---

[353] *Id.* at p. 22 (citing Rec. Doc. 64-6 at p. 18).

[354] *Id.* (citing Rec. Doc. 64-5 at pp. 31–62).

[355] Rec. Doc. 69 at p. 5.

[356] *Id.* (citing Rec. Doc. 69-3 at p. 20).

[357] *Id.* (citing Rec. Doc. 69-6).

[358] *Id.* (citing Rec. Doc. 69-7).

[359] *Id.* (citing Rec. Doc. 69-3 at pp. 16–24).

[360] *See* Rec. Doc. 69-3 at pp. 16–24.

anyone else."[361] In support, Plaintiff cites Bylsma's deposition, in which he stated that he would check up on her "a little bit more than I would anybody else" and explaining that he did so because he felt she was not completing tasks in a timely manner.[362] Plaintiff also alleges that he performed other acts that eventually caused Mays to call him a "bully," citing only Bylsma's deposition testimony in which he admits that she called him a bully.[363]

In her Complaint, Mays explicitly refers to only one incident that allegedly triggered retaliatory actions: her filing of a charge with the EEOC.[364] In her opposition to Defendant's motion for summary judgment, however, Mays asserts that she was in fact retaliated against for criticizing, in November 2013, her supervisor's handling of a discrimination complaint she had filed against another employee, presumably Rodriguez.[365] The Court may also infer, from the fact that she claims retaliation in violation of the ADA and the FMLA, that Plaintiff alleges she was retaliated against for requesting accommodations under the ADA and for requesting leave under the FMLA. According to Mays, the Port retaliated by issuing the pre-deprivation notice, removing Mays' name plate from her office door, packing all her personal items in her office, removing her name from the organization chart, placing her in a shared office, and assigning her tasks solely to harass her.[366]

Defendant alleges that Mays has failed to establish the "causation" prong because she has offered no evidence to rebut Defendant's proffered evidence that several decisions, including issuing the pre-deprivation notice or assigning Mays to a shared office, were made before Plaintiff filed her

---

[361] Rec Doc. 69 at p. 5 (citing Rec. Doc. 69-3 at p. 29).

[362] *Id* .(citing Rec. Doc. 69-3 at p. 29).

[363] *Id.* (citing Rec. Doc. 69-3 at pp. 25–32).

[364] Rec. Doc. 1 at p. 5.

[365] Rec. Doc. 69 at p. 5.

[366] Rec. Doc. 1 at p. 6.

EEOC charge, and in the case of the shared office, before Plaintiff complained of Rodriguez's e-mail.[367] However, assuming that Plaintiff can make out a prima facie case of retaliation, the burden would then shift to Defendant to produce evidence that its actions were non-discriminatory and non-retaliatory.[368] If the Defendant does so, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[369]

Defendant articulates a non-discriminatory purpose for each of its allegedly retaliatory acts. With regard to the pre-deprivation notice, Defendant produces evidence that it issued the notice before it learned of Plaintiff's EEOC charge, and that it was issued because the Port believed that she was unable to return to work.[370] It is uncontroverted that the pre-deprivation notice was later rescinded.[371] Defendant also produces sealed evidence that similar notices were issued to at least six other Port employees, including both male and female and black and white employees.[372] Next, Defendant produces evidence, in the form of deposition testimony by Bylsma, that Bylsma decided to move Plaintiff to a shared office in order to have her be located nearer to him, and that this decision was made as early as March 2013, before Plaintiff engaged in any protected activity.[373] Furthermore, citing Bylsma's deposition testimony, Defendant claims that the name plate removal, packed up office, and organizational chart change were all part of the normal procedure performed when an employee is believed to be leaving the Port.[374]

---

[367] Rec. Doc. 64-2 at pp. 21–22.

[368] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

[369] *Id.*

[370] *See* Rec. Doc. 64-6 at pp. 15, 18–20.

[371] Rec. Doc. 64-1 at p. 4.

[372] Rec. Doc. 64-2 (citing Ex. 41 at pp. 441, 463–94).

[373] *See* Rec. Doc. 64-5 at pp. 4–8.

[374] Rec. Doc. 64-2 at p. 24 (citing Rec. Doc. 64-5 at pp. 11–12).

None of the evidence of retaliation, cited by Plaintiff in her opposition, rebuts Defendant's production of evidence of legitimate, non-retaliatory reasons for any adverse employment actions against her, nor does it show that the reasons proffered by Defendant are merely a pretext. Even assuming that all of Plaintiff's complained-of conduct constitutes "adverse employment actions" for purposes of the FMLA, ADA, and Title VII's anti-retaliation provisions, the actions she cites, including Bylsma's alleged physical aggression or his micro managing, are explained in the very deposition testimony that Plaintiff relies on. For example, Plaintiff accuses Bylsma of micro-managing her for retaliatory reasons by citing a deposition in which Bylsma says nothing about retaliation and explains that he checked in on her because she was not completing tasks in a timely manner.[375] As for Bylsma's alleged physical aggression, Plaintiff proffers no evidence to rebut Bylsma's characterization of the incident as one in which Plaintiff and Defendant both attempted to hold on to a piece of paper for what Mays stated in her own deposition was "a few seconds."[376]

Under the third step of the *McDonnell Douglas* burden-shifting framework, Plaintiff can rebut Defendant's non-discriminatory explanations for its conduct by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[377] Plaintiff has not done so here. Therefore, this Court grants summary judgment in favor of Defendant on Plaintiff's retaliation claims.

## IV. Conclusion

For the reasons stated herein,

**IT IS HEREBY ORDERED** that the Board of Commissioners, Port of New Orleans' and

---

[375] Rec. Doc. 69-3 at p. 29.

[376] *See* Rec. Doc. 69-3 at pp. 16–17; Rec. Doc. 64-3 at p. 85.

[377] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Ryan Bylsma's "Motion for Summary Judgment"[378] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** with regard to Plaintiff's claims pursuant to Title VII, the FMLA, state law discrimination, and retaliation. Defendant's motion is **DENIED** with regard to Plaintiff's claims of discrimination under the ADA.

**NEW ORLEANS, LOUISIANA,** this __29th__ day of October, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[378] Rec. Doc. 64.